1    Edith J. Benay, S.B.N. 98747
2    Law Office of Edith J. Benay
     345 Franklin Street
3    San Francisco, CA 94102
     Telephone:    (415) 241-7286
4    Facsimile:    (415) 252-8048

5    Attorney for Plaintiffs

6

7

8

9                    IN THE UNITED STATES DISTRICT COURT

10                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

12

13   JUDITH CHOW and SCOTT WILLIAMS    )
                                        )        Case No.
            Plaintiffs                  )
14                                      )
                                        )        COMPLAINT FOR
15   v.                                 )        VIOLATION OF RACKETEERING
                                        )        INFLUENCED AND CORRUPT
16                                      )        ORGANIZATION ACT
                                        )        18 U.S.C. 1961 ET SEQ.
17   JUDITH JOHNSON, ROBERT HAWLEY,     )
     ELYSE COTANT, STARR BABCOCK        )
18   and PEGGY VAN HORN                 )        **JURY DEMAND**
                                        )
19                                      )
            Defendants                  )
20   _____  )

21

22

23

24

25

26

27   COMPLAINT   FOR VIOLATION OF
     RACKETEERING INFLUENCED
28   AND CORRUPT ORGANIZATION ACT

**I.**

**JURISDICTION**

1.    Jurisdiction is conferred on this Court by 28 U.S.C. §1331 and by the equitable powers inherent in the courts of the United States.

2.    This is an action for violation of the Racketeer Influenced Corrupt Organizations Act 18 U.S.C. 1961 *et.seq*.

3.    Venue of this action is appropriate in this district under the provisions of 28 U.S.C.§ 1391.

4.    Plaintiffs  have standing to bring this action.

5.    All causes of action arose in San Francisco County, California.

**II.**

**PARTIES**

6.    Plaintiff  JUDITH CHOW is a  resident of the State of California.  She has been employed at the State Bar of California, (State Bar), in San Francisco California, for approximately twenty years and has been a Member Billing Technician since in or around 1998. Since in or around 2002 and continuing she has reported financial defalcations in the Member Billing Department to Defendants, which defalcations amount to extortion and mail fraud under federal law.  Defendants are Directors and Executive Staff of the State Bar.  Since Plaintiff CHOW first made those reports, and continuing, Defendants have conspired to subject her to witness tampering  in violation of federal law.   Together, the extortion, mail fraud and witness tampering constitute a pattern of racketeering activity which, within the past four years,  has

proximately caused Plaintiff damage to her property and business.

7.    Plaintiff SCOTT WILLIAMS is a resident of the State of California.  He has been employed at the State Bar in San Francisco California, for approximately fifteen years and has been a Member Billing Technician since in or around 2000. Since in or around 2002 and continuing he has reported financial defalcations in the Member Billing Department to Defendants, which defalcations amount to extortion and mail fraud under federal law. Defendants are Directors and Executive Staff of the State Bar.   Since Plaintiff WILLIAMS  first made those reports, and continuing, Defendants have subjected him to witness tampering and have conspired to subject him to witness tampering  in violation of federal law.   Together, the extortion, mail fraud and witness tampering constitute a pattern of racketeering activity which, within the past four years,  has proximately caused Plaintiff damage to his property and business

8.    Defendant ROBERT HAWLEY is a resident of the State of California and is Deputy  Executive Director for the  State Bar.of  California.

9.    Defendant Elyse Cotant is the former Director of Member Billing and the former Director of Member Services for the State Bar.   Plaintiffs are informed and believe and on that basis allege that  Defendant COTANT has been  a Special Advisor, Member Service Center for the State Bar since her separation from the State Bar in or around 2005.

10.    Defendant PEGGY VAN HORN is a resident of the State of California and the Senior Executive, Finance, for the State Bar.

11.     Defendant STARR BABCOCK, is a resident of the State of California and the Special Assistant to the Executive Director and Senior Executive, Member Services,  for the

State Bar.

12.    Defendant JUDITH JOHNSON is a resident of the State of California and the Executive Director of the State Bar.

13.    Plaintiffs are informed and believe, and on that basis allege, that each of the Defendants was acting as the agent of each of the other Defendants, and in doing the acts alleged herein, was acting within the course and scope of such agency and aided, abetted, cooperated with and or conspired with one another to do the acts alleged herein.

## FIRST CAUSE OF ACTION

### (Racketeer Influence and Corrupt Organizations)

.    14.    Plaintiffs  incorporate all of the allegations contained in paragraphs 1 through 13 as  if set out at length herein.

15.    Defendants JUDITH JOHNSON, ROBERT HAWLEY, ELYSE COTANT, STARR  BABCOCK and  PEGGY  VAN HORN are "persons," as defined  at 18 U.S.C. 1961(3).

16.    The State Bar is an enterprise  affecting interstate  commerce, as defined at 18 U.S.C. 1961(4),  in  that the  multi-state scope of this entity's membership, programs and dues arrangements make possible a flow of  funds that substantially affects interstate commerce.

17.    Defendants,  ROBERT HAWLEY, ELYSE COTANT, STARR  BABCOCK, PEGGY  VAN HORN and JUDITH JOHNSON, are all Directors or former Directors and members or former members of the Executive Staff of the State Bar.  Since in or around 1998, and/or since their employment with the State Bar, Defendants,  acting in their individual capacities and in their official capacities,  have participated directly or indirectly in conducting

COMPLAINT  FOR VIOLATION OF
RACKETEERING INFLUENCED
AND CORRUPT ORGANIZATION ACT                3

the affairs of the State Bar enterprise through a pattern of racketeering activity in violation of

18 U.S.C. 1962 ©). This pattern of racketeering activity consists of the combination of extortion,

mail fraud, wire fraud and tampering with witnesses with the intent to prevent them or attempt to

prevent them from testifying in official proceedings about the extortion, mail fraud and wire

fraud, and to prevent or attempt to prevent them from reporting it to law enforcement and judges

of the United States. This pattern of racketeering activity has continued for a period of years

since in or around 1998 and presents a threat of open ended continuity.

18.    Since in or around 1998 and/or when employed by the State Bar, Defendants

ROBERT HAWLEY, ELYSE COTANT, STARR BABCOCK, PEGGY VAN HORN and

JUDITH JOHNSON have associated in fact as an enterprise affecting interstate commerce in

that the multi-state scope of the State Bar membership reached by this associated in fact

enterprise makes possible a flow of funds that substantially affects interstate commerce as

defined at 18 U.S.C. 1961(4). This associated in fact enterprise has a common or shared purpose

to increase the State Bar's General Fund and to increase contributions to the Conference of

Delegates and the State Bar Foundation, also known as the Cal Bar Foundation which benefits

the State Bar's General Fund. This common or shared purpose is to Defendants' benefit.

19.    Defendants, acting in their individual capacities and in their official capacities,

have participated directly or indirectly in conducting the affairs of this associated in fact

enterprise through a pattern of racketeering activity in violation of 18 U.S.C. 1962©). This

pattern of racketeering activity consists of the combination of extortion, mail fraud, wire fraud

and tampering with witnesses with the intent to prevent Plaintiffs or attempt to prevent them

from testifying about the extortion, mail fraud and wire fraud in official proceedings and to

prevent them from reporting it to law enforcement and judges of the United States. This

associated in fact enterprise has continuity of structure and personnel and an ascertainable

structure distinct from that inherent in the pattern of racketeering.

COMPLAINT FOR VIOLATION OF
RACKETEERING INFLUENCED
AND CORRUPT ORGANIZATION ACT                4

20.    Since on or about 1998 and continuing to the present Defendants have conspired to violate 18 U.S.C. 1962 ( c) , in violation of 18 U.S.C. 1962(d), by conspiring to commit federal violations constituting predicate acts under 18 U.S.C. 1961, including but not limited to the federal violations described below.

21.    Defendants' pattern of racketeering activity and conspiracy to engage in a pattern of racketeering activity includes but is not limited to a pattern of mail fraud and wire fraud (credit card payments, use of internet for credit card payments) defined by 18 U.S.C. 1341 and 1343, as devising schemes or artifices with the specific intent of using the United States mails or wires for obtaining money by means of false or fraudulent pretenses, and for the purpose of executing such schemes or artifices or attempting to do so. Mail fraud and wire fraud are predicate acts under 18 U.S.C. 1961 of RICO. Such schemes or artifices for mail fraud and wire fraud were devised by Defendants with the specific intent of defrauding members into paying more to the State Bar, the Conference of Delegates and/or the State Bar Fund/Cal Bar Fund than required or authorized. Defendants' schemes or artifices for mail fraud and/or wire fraud began in or around 1998 and are continuing. They include but are not limited to the following:

a. Between in or around 1998 and 2004-2005 Defendants have intentionally used the mail and conspired to use the mail to misrepresent their obligation to pay inactive fees and to defraud inactive members age 70 or over into paying inactive fees that they were not required to pay. Those payments were commingled with the State Bar's General Fund and used by the State Bar. Refunds of payments made as early as 1998 did not begin until 2004, if at all.

b. Since on or about 1998 and continuing Defendants have intentionally used the mail and/or wires, and/or conspired to use the mail and/or wires, to defraud members who believed they were sending money to the State Bar for donations to the Conference of Delegates or the State Bar Fund/Cal Bar Fund, into making additional payments to the State Bar General Fund purportedly for penalties of which the member was never informed and had no opportunity to

COMPLAINT FOR VIOLATION OF
RACKETEERING INFLUENCED
AND CORRUPT ORGANIZATION ACT                    5

1    question or protest or pay without diminishing their contribution.

2    c. Since on or about 1998 and continuing Defendants have intentionally used the mail

3    and/or wires and conspired to use the mail and/or wires to defraud members who believed they

4    were sending money to the State Bar to pay for "sections" into making additional payments to the

5    State Bar General Fund purportedly for penalties of which the member was never informed and

6    had no opportunity to question or protest or pay without diminishing payment for  sections.

7    Under normal circumstances, payments for sections do not go to the General Fund.

8    d. Since on or about 1998 and continuing Defendants have intentionally used the mail

9    and/or wires and conspired to use the mail and/or wires, to defraud members who believed they

10   were sending money to the State Bar for a specific purpose,   into making unauthorized

11   contributions to the Conference of Delegates and/or the State Bar Fund/Cal Bar Fund, by using

12   "overpayments" to make unauthorized contributions.

13   e. Since on or about 1998 and continuing Defendants intentionally used the mail and/or

14   wires and conspired to use the mail and/or wires to defraud members, law firms and government

15   agencies into making multiple payments, which Defendants commingled with the General Fund

16   and used as revenue.  These multiple payments were made when  the  initial payments were not

17   credited to members' accounts because errors in the payment made it difficult to allocate, when

18   posting of the original payment was delayed  or when  malfunctions in the internet method of

19   payment and/or the credit card method of payment  caused multiple payments to be recorded.

20   Defendants intentionally avoided refunding any part of these  multiple payments, in some cases

21   for as long as five years,  if at all.

22   f. Since on or about 2002 Defendants intentionally used the mail and/or wires and

23   conspired to use the mail and/or wires to defraud  members who believed that a portion of their

24   dues or inactive fees were  being used to support the Lawyers Assistance Program (LAP).

25   Instead, each year since  2002 between 53% and  21%  of the LAP budget has been donated to

26   the State Bar for use in State Bar General Fund programs.

27
COMPLAINT  FOR VIOLATION OF
RACKETEERING INFLUENCED
28   AND CORRUPT ORGANIZATION ACT              6

g. In 2000 Defendants intentionally used the mail and conspired to use the mail to defraud certain members who made voluntary payments in 1998 and 1999 to cause them to lose  the opportunity to request that their voluntary payments be refunded or credited to their future dues or fees.  Refunds and credits had to be expressly requested by a certain date, otherwise the voluntary payments would automatically default to a contribution to the State Bar.  Defendants intentionally failed to research correct addresses for about statements allegedly returned as "undeliverable" until after the deadline passed and it was too late to request a credit or refund.

h. Since on or about 1998 Defendants have intentionally  used  the mail and conspired to use the mail to defraud certain members into paying more for dues than they owe by omitting subtotals on the annual statement and designing the statement so that it is  difficult to determine that  members have  credits on their accounts.

I. Defendants have intentionally used the mail and have conspired  to use the mail to attempt to defraud certain members and former members as to the amount they owe in reimbursements to the Client Security Fund by duplicating charges and including the cost of collection in what they owe.

k. At various times since on or about 1998 Defendants have intentionally used the mail and have conspired to use the mail to  misrepresent the requirements for fee scaling on the annual statement and defraud certain members into paying  more for dues than they were required to pay.

22.    Defendants' pattern of racketeering activity and conspiracy to commit a pattern  of racketeering, includes but is  not  limited to a pattern  of extortion, defined by 18 U.S.C. 1951 as  the  obtaining of property from another, with his consent, induced by a wrongful use of  fear or under color of official right.    Extortion is a predicate act under RICO, 18 U.S.C. 1961(1). Defendants acted with specific intent to extort funds from members over a period of years beginning in or around 1998 and continuing.   Defendants' intentional acts of extortion include but are not limited to the following:

COMPLAINT   FOR VIOLATION OF
RACKETEERING INFLUENCED
AND CORRUPT ORGANIZATION ACT                7

1      a. In or around 1998, using fear  of  suspension from the STATE BAR  and,  under color

2  of official right to receive payments of inactive fees,  Defendants intentionally redesigned the fee

3  statement and conspired to re-design the fee statement with specific intent to mislead inactive

4  members over the age of 70 into paying the $50 inactive fee which they were  not required to

5  pay.  Defendants commingled those payments with the General Fund and used those payments as

6  revenue, conspiring to not refund those payments until about  2004/2005, if at all, and if cash

7  flow permitted and if  the member could be located..

8      b. Since on or about 1998, using fear of suspension from the State Bar and/or  under color

9  of official right to receive money intended to pay for "sections" Defendants have intentionally

10  used certain members'  "sections" payments and conspired to use these "sections" payments  to

11  pay purported late penalties to the General Fund, without seeking or receiving authorization from

12  the member.  Under normal circumstances, payments for sections do not go to the General Fund.

13      c. Since on or about 1998, using fear of suspension from the State Bar and/or under color

14  of official right to receive donations intended for the Foundation of the State Bar of California,

15  also entitled Cal Bar Fund, Defendants have intentionally used some of  those donations and

16  conspired  to use some of those donations to pay purported late penalties without seeking or

17  receiving authorization from the member and without informing the member that their tax

18  deductible donation was reduced.

19      d. Since on or about 1998, using fear of suspension from the State Bar and/or  under color

20  of official right to receive payments from members,  Defendants have intentionally used,  and

21  conspired to use,  all or part of  members' excess payments as donations to the State Bar's

22  Conference of Delegates, donations to the   Foundation of the State Bar, also known as the Cal

23  Bar Foundation, and in some cases to the State Bar itself.   Prior to 2002  the Conference of

24  Delegates was  part of the State Bar  but  since 2002  it has been a separate non-profit trade

25  association under IRS §501(c)(6), enabling it to engage in advocacy, lobbying and ballot measure

26  activities. These donations have been made without  authorization from the member and instead

27

28

1  of  getting authorization, instead of refunding the money  to the member  and instead of

2  crediting the money  to the member's State Bar account.   The remainder of the excess payment,

3  if any, is  kept in the General Fund, used by the State Bar and may or may not  have been carried

4  as a credit on the member's account.

5      e. Since on or about 1998, using fear of suspension from the State Bar and/or  under color

6  of official right to receive payments from members and from law firms and government agencies

7  making payments on behalf of members,   Defendants have intentionally retained and used  and

8  have conspired  to retain and use "multiple payments,"   These multiple payments were made

9  when  the  initial payments were not credited to members' accounts because errors in the

10  payment made it difficult to allocate, when posting of the original payment was delayed or when

11  malfunctions in the internet method of payment and/or the credit card method of payment  caused

12  multiple payments to be recorded.   Defendants have intentionally commingled those funds with

13  the State Bar's General Fund and have intentionally avoided refunding any part of those  multiple

14  payments, in some cases  for as long as five years,  if at all.

15      f. Using fear of suspension from the State Bar and under color of official right to

16   receive payments from members for late penalties, Defendants JOHNSON, HAWLEY,

17  BABCOCK and VAN HORN have intentionally held and have conspired to hold members' 2007

18  payments of unnecessary penalties, without refund.   These payments have been held since early

19  February, 2007.

20      g. Each year since 2002, using fear of suspension from the State Bar and under color of

21  official right to use a certain portion of each member's dues or inactive fees to support the

22  Lawyers' Assistance Program (LAP) Defendants have intentionally taken and have conspired to

23  take between 21% to 53% of the LAP's budget for use by State Bar General Fund programs.

24      h. Under color of official right to bill attorneys and former attorneys who are required to

25  reimburse the Client Security Fund for payments made to their former clients, Defendants have

26  intentionally over billed and have conspired to over bill  those members or former members

27  COMPLAINT  FOR VIOLATION OF
RACKETEERING INFLUENCED

28  AND CORRUPT ORGANIZATION ACT                    9

1    including but not limited to billing them for costs of collection activities.

2        I. In 2000, using fear of suspension from the State Bar and fear of loss of State Bar

3    services and/or under color of official right Defendants JOHNSON, HAWLEY and COTANT

4    intentionally kept and conspired to keep voluntary payments made during the 1998 and 1999

5    fiscal crisis, as donations to the State Bar, by intentionally causing and conspiring to cause

6    certain members to lose the opportunity to request that their voluntary payments be refunded or

7    credited to their 2000 dues or fees. Refunds and credits had to be expressly requested by a

8    certain date, otherwise the voluntary payments would automatically default to a contribution to

9    the State Bar. Defendants intentionally failed to research correct addresses for statements

10   allegedly returned as "undeliverable" until after the deadline passed and it was too late to request

11   a credit or refund.

12       j. Using fear of suspension from the State Bar and under color of official right to receive

13   payments from members, Defendants have conspired to send confusing and misleading

14   statements, including but not limited to the omission of subtotals, causing members who have

15   credits on their accounts to be misled and to continue paying the full amount of their dues,

16   without using the credit, which remains in the General Fund and is used as revenue.

17       k. Using fear of suspension from the State Bar and under color of official right

18   Defendants have intentionally misrepresented and have conspired to misrepresent, the rights and

19   procedures for dues scaling thereby causing members who were entitled to scale their dues to

20   remit the entire dues payment instead.

21       23.    Defendants' pattern of racketeering activity and conspiracy to commit a pattern

22   of racketeering activity includes but is not limited to a pattern of tampering with witnesses

23   and/or potential witnesses as defined by 18 U.S.C. §1512 , for the purpose of attempting to

24   prevent Plaintiffs from testifying about the above described federal violations in official

25   proceedings and/or reporting the above described federal violations to law enforcement or a

26   judge of the United States. This tampering with witnesses has continued since on or about 2002

27

28

COMPLAINT  FOR VIOLATION OF
RACKETEERING INFLUENCED
AND CORRUPT ORGANIZATION ACT              10

and is likely to continue.  Defendants' tampering with witnesses includes but is not limited to the following:

a. Since on or about 2002, when Plaintiffs began reporting  some of the above described federal violations to Defendants,   and continuing,  Defendants have intentionally demonstrated hostility and have conspired to demonstrate  hostility to Plaintiffs amounting to threats of physical force and attempted intimidation, on occasion leaving Plaintiffs physically shaken, in fear of physical injury and/or suffering physically.

b.  Since on or about 2002, when Plaintiffs began reporting  some of the above described federal violations to Defendants,  and continuing,  Defendants have intentionally caused others to demonstrate hostility to Plaintiffs and have conspired to cause others to demonstrate hostility to Plaintiffs, amounting to intimidation.

c. In 2005 Defendant Peggy Van Horn threatened to reduce the salary grade for the three remaining Billing Technicians, two of whom were Plaintiffs.    That threat has never been withdrawn and Plaintiffs job duties are being reduced and transferred to a different department(s).   The third Billing Technician in 2005 has also been transferred to a different department.

d. Plaintiffs' performance evaluations have deteriorated since first reporting the above federal violations and in 2005 Defendants ELYSE COTANT, STARR BABCOCK and PEGGY VAN HORN , rated Plaintiffs' Communication/ Collaboration/Teamwork/Interpersonal Skills as "needs improvement" which is the lowest possible rating. and generates the possibility of discipline up to and including termination.   In 2006 Defendant VAN HORN again rated Plaintiffs' Communication/ Collaboration/Teamwork/ Interpersonal Skills as "needs improvement."

e. In or around 2006 Defendant PEGGY VAN HORN,  threatened Plaintiff CHOW with discipline up to and including termination for saying that the State Bar was misappropriating member funds .

COMPLAINT   FOR VIOLATION OF
RACKETEERING INFLUENCED
AND CORRUPT ORGANIZATION ACT                11

1    f. In or around 2006 Defendant PEGGY VAN HORN threatened Plaintiff WILLIAMS

2  with discipline up to and including  termination for identifying what she referred to as "over

3  $1,000,000 in accounting errors" in the Client Security Fund.

4    g.  In or around 2004 Defendant STARR BABCOCK  told Plaintiff CHOW to stop

5  writing memos and he told Plaintiff WILLIAMS that he would never get promoted  if he kept

6  writing memos.  Shortly thereafter BABCOCK personally participated in at least two hiring

7  procedures in which he took wrongful action to assure that WILLIAMS would not be promoted.

8    h. Since in or around 2002 and continuing Defendants have wrongfully prevented

9  Plaintiffs from  receiving training despite their skills and qualifications and since in or around

10  2004 Defendants have wrongfully prevented Plaintiffs from receiving  promotions.

11    I.  In 2002/2003 Defendants COTANT , HAWLEY and JOHNSON conspired to provide

12  false information to auditors and to conduct a limited audit based on false information in order to

13  corruptly persuade and mislead Plaintiffs and/or to attempt to corruptly persuade and mislead

14  them with the intent of influencing, delaying or preventing Plaintiffs' testimony about the above

15  Federal violations of extortion and mail/wire fraud, in any official proceeding or reporting those

16  Federal violation to law enforcement or a judge of the United States.

17    24.  Within the past four years,  Defendants have intentionally and wrongfully deprived

18  Plaintiffs of promotions with the specific intent of attempting to intimidate, harass, corruptly

19  persuade and mislead them into not testifying about Defendants' extortion and mail/wire fraud in

20  official proceedings and not reporting Defendants' extortion and mail/wire fraud to law

21  enforcement or judges of the United States.   Defendants' furtherance of their pattern of

22  racketeering activity  is the direct and proximate cause of this injury to Plaintiffs' business and

23  property.   Such injury was the direct target of Defendants' pattern of racketeering activities and

24  their conspiracy to conduct a pattern of racketeering activities

25    25.    As a direct, foreseeable and proximate result of  Defendants' conduct Plaintiffs

26  have  lost salary and other employment benefits, constituting damage to business and property,

27
COMPLAINT   FOR VIOLATION OF
RACKETEERING INFLUENCED
28  AND CORRUPT ORGANIZATION ACT        12

to which they are entitled, in an amount to be proven at trial.

26.    . Pursuant to 18 U.S.C.1952. Plaintiffs are entitled to treble  damages for  business and property losses.

27.    As a direct, foreseeable and proximate result of  Defendants' pattern of  racketeering activity Plaintiffs  have  incurred and will continue to incur costs and attorney's fees.

**PRAYER FOR RELIEF**

**THEREFORE, PLAINTIFFS  PRAY AS FOLLOWS:**

1.    For judgment against all defendants;

2.    For treble damages to property and business;

3.    For Costs and Attorneys Fees; and

4.    For all other damages the court deems just and proper.

Dated: August 29,  2007                         //Edith Benay//

_____

Edith J. Benay
Attorney for Plaintiffs

**JURY TRIAL DEMAND**

Plaintiffs demand, pursuant to Rule 38(b) of the Federal rules of Civil Procedure, a trial by jury of all issues properly triable to a jury.

Dated: August 29, 2007                         // Edith Benay//

_____

Edith J. Benay,
Attorney for Plaintiffs

COMPLAINT   FOR VIOLATION OF
RACKETEERING INFLUENCED
AND CORRUPT ORGANIZATION ACT                13