Edith J. Benay, S.B.N. 98747
Law Office of Edith J. Benay
345 Franklin Street
San Francisco, CA 94102
Telephone: (415) 241-7286
Facsimile: (415) 252-8048

Attorney for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUDITH CHOW and SCOTT WILLIAMS <br><br> Plaintiffs <br><br> v. <br><br> JUDY JOHNSON, ROBERT HAWLEY, ELYSE COTANT, STARR BABCOCK and PEGGY VAN HORN <br><br> Defendants | Case No.C 07 4478 CW <br><br> AMENDED COMPLAINT FOR VIOLATION OF RACKETEERING INFLUENCED AND CORRUPT ORGANIZATION ACT 18 U.S.C. 1961 ET SEQ. <br><br> **JURY DEMAND** |

AMENDED COMPLAINT   FOR VIOLATION
OF  RACKETEERING INFLUENCED
AND CORRUPT ORGANIZATION ACT

## I.

## **JURISDICTION**

1. Jurisdiction is conferred on this Court by 28 U.S.C. §1331 and by the equitable powers inherent in the courts of the United States.

2. This is an action for violation of the Racketeer Influenced Corrupt Organizations Act 18 U.S.C. 1961 *et.seq*.

3. Venue of this action is appropriate in this district under the provisions of 28 U.S.C.§ 1391.

4. Plaintiffs have standing to bring this action.

5. All causes of action arose in San Francisco County, California.

## II.

## **PARTIES**

6. Plaintiff JUDITH CHOW is a resident of the State of California. She has been employed at the State Bar of California, (State Bar), in San Francisco California, for approximately twenty years and has been a Member Billing Technician since in or around 1998. Since in or around 2002 and continuing she has reported financial defalcations in the Member Billing Department to Defendants, which defalcations amount to extortion and mail fraud under federal law. Defendants are Directors and Executive Staff of the State Bar. Since Plaintiff CHOW first made those reports, and continuing, Defendants have conspired to subject her to witness tampering in violation of federal law. Together, the extortion, mail fraud and witness tampering constitute a pattern of racketeering activity which, within the past four years, has

AMENDED COMPLAINT FOR VIOLATION
OF RACKETEERING INFLUENCED
AND CORRUPT ORGANIZATION ACT         1

proximately caused Plaintiff damage to her property and business.

7.  Plaintiff SCOTT WILLIAMS is a resident of the State of California.  He has been employed at the State Bar in San Francisco California, for approximately fifteen years and has been a Member Billing Technician since in or around 2000. Since in or around 2002 and continuing he has reported financial defalcations in the Member Billing Department to Defendants, which defalcations amount to extortion and mail fraud under federal law. Defendants are Directors and Executive Staff of the State Bar.   Since Plaintiff WILLIAMS  first made those reports, and continuing, Defendants have subjected him to witness tampering and have conspired to subject him to witness tampering  in violation of federal law.   Together, the extortion, mail fraud and witness tampering constitute a pattern of racketeering activity which, within the past four years,  has proximately caused Plaintiff damage to his property and business

8.  Defendant ROBERT HAWLEY is a resident of the State of California and is Deputy  Executive Director for the  State Bar.of  California.

9.  Defendant Elyse Cotant is the former Director of Member Billing and the former Director of Member Services for the State Bar.   Plaintiffs are informed and believe and on that basis allege that  Defendant COTANT has been  a Special Advisor, Member Service Center for the State Bar since her separation from the State Bar in or around 2005.

10.   Defendant PEGGY VAN HORN is a resident of the State of California and the Senior Executive, Finance, for the State Bar.

11.   Defendant STARR BABCOCK, is a resident of the State of California and the Special Assistant to the Executive Director and Senior Executive, Member Services,  for the

AMENDED COMPLAINT   FOR VIOLATION
OF  RACKETEERING INFLUENCED
AND CORRUPT ORGANIZATION ACT              2

State Bar.

12. Defendant JUDY JOHNSON is a resident of the State of California and the Executive Director of the State Bar.

13. Plaintiffs are informed and believe, and on that basis allege, that each of the Defendants was acting as the agent of each of the other Defendants, and in doing the acts alleged herein, was acting within the course and scope of such agency and aided, abetted, cooperated with and/ or conspired with one another to do the acts alleged herein.

## FIRST CAUSE OF ACTION
### (Racketeer Influence and Corrupt Organizations)

. 14. Plaintiffs incorporate all of the allegations contained in paragraphs 1 through 13 as if set out at length herein.

15. Defendants JUDY JOHNSON, ROBERT HAWLEY, ELYSE COTANT, STARR BABCOCK and PEGGY VAN HORN are "persons," as defined at 18 U.S.C. 1961(3).

16. The State Bar is an enterprise affecting interstate commerce, as defined at 18 U.S.C. 1961(4), in that the multi-state scope of this entity's membership, programs and dues arrangements make possible a flow of funds that substantially affects interstate commerce.

17. Defendants, ROBERT HAWLEY, ELYSE COTANT, STARR BABCOCK, PEGGY VAN HORN and JUDY JOHNSON, are all Directors or former Directors and members or former members of the Executive Staff of the State Bar. Since in or around 1998, and/or since their employment with the State Bar, Defendants, acting in their individual capacities and in their official capacities, have participated directly or indirectly in conducting the affairs of the

State Bar enterprise through a pattern of racketeering activity in violation of 18 U.S.C. 1962 ©). This pattern of racketeering activity consists of the combination of extortion, mail fraud, wire fraud and tampering with witnesses with the intent to prevent witnesses, including but not limited to Plaintiffs, or attempt to prevent witnesses, from testifying in official proceedings about extortion, mail fraud and wire fraud, and to prevent or attempt to prevent them from reporting it to law enforcement and Judges of the United States. This pattern of racketeering activity has continued for a period of years since in or around 1998 and presents a threat of open-ended continuity.

18. Since in or around 1998 and/or when employed by the State Bar, Defendants ROBERT HAWLEY, ELYSE COTANT, STARR BABCOCK, PEGGY VAN HORN and JUDY JOHNSON have associated in fact as an enterprise affecting interstate commerce in that the multi-state scope of the State Bar membership reached by this associated in fact enterprise makes possible a flow of funds that substantially affects interstate commerce as defined at 18 U.S.C. 1961(4). This associated in fact enterprise has a common or shared purpose to increase the State Bar's General Fund and to increase contributions to the Conference of Delegates and the State Bar Foundation, also known as the Cal Bar Foundation, which benefits the State Bar. This common or shared purpose is to Defendants' benefit.

19. Defendants, acting in their individual capacities and in their official capacities, have participated directly or indirectly in conducting the affairs of this associated in fact enterprise through a pattern of racketeering activity in violation of 18 U.S.C. 1962©). This pattern of racketeering activity consists of the combination of extortion, mail fraud, wire fraud and tampering with witnesses with the intent to prevent witnesses, including but not limited to Plaintiffs, or attempt to prevent them from testifying about extortion, mail fraud and wire fraud in official proceedings and to prevent them from reporting it to law enforcement and judges of the United States. This associated in fact enterprise has continuity of structure and personnel and an ascertainable structure distinct from that inherent in the pattern of racketeering.

AMENDED COMPLAINT FOR VIOLATION
OF RACKETEERING INFLUENCED
AND CORRUPT ORGANIZATION ACT         4

20. Since on or about 1998 and continuing to the present Defendants have conspired to violate 18 U.S.C. 1962 ( c), in violation of 18 U.S.C. 1962(d), by conspiring to commit federal violations constituting predicate acts under 18 U.S.C. 1961, including but not limited to the federal violations described below.

21. Defendants' pattern of racketeering activity and conspiracy to engage in a pattern of racketeering activity includes but is not limited to a pattern of mail fraud and wire fraud (credit card payments, use of internet for credit card payments) defined by 18 U.S.C. 1341 and 1343, as devising schemes or artifices with the specific intent of using the United States mails or wires for obtaining money by means of false or fraudulent pretenses, and for the purpose of executing such schemes or artifices or attempting to do so. Mail fraud and wire fraud are predicate acts under 18 U.S.C. 1961 of RICO. Such schemes or artifices for mail fraud and wire fraud were devised by Defendants with the specific intent of defrauding members into paying more to the State Bar, the Conference of Delegates and/or the State Bar Fund/Cal Bar Fund than required or authorized. Defendants' schemes or artifices for mail fraud and/or wire fraud began in or around 1998 and are continuing. They include but are not limited to the following:

a. Between approximately 1998 and 2004-2005 Defendants have intentionally used the mail and conspired to use the mail to misrepresent the fee waiver for inactive members age 70 or over and to defraud inactive members age 70 or over into paying fees that they were not required to pay. Those payments were commingled with the State Bar's General Fund and used by the State Bar. Refunds of payments made as early as 1998 did not begin until 2004, if at all.

b. Since on or about 1998 and continuing Defendants have intentionally used the mail and/or wires, and/or conspired to use the mail and/or wires, to defraud certain members who believed they were sending money to the State Bar for donations to the State Bar Fund/Cal Bar Fund, into making additional payments to the State Bar General Fund purportedly for penalties of which the member was never informed and had no opportunity to question or protest or pay

AMENDED COMPLAINT FOR VIOLATION
OF RACKETEERING INFLUENCED
AND CORRUPT ORGANIZATION ACT                5

without diminishing their contribution(s).

c. Since on or about 1998 and continuing Defendants have intentionally used the mail and/or wires and conspired to use the mail and/or wires to defraud certain members who believed they were sending money to the State Bar to pay for "sections" into making additional payments to the State Bar General Fund purportedly for penalties of which the member was never informed and had no opportunity to question or protest or pay without diminishing payment for sections. Under normal circumstances, payments for sections do not go to the General Fund.

d. Since on or about 1998 and continuing Defendants have intentionally used the mail and/or wires and conspired to use the mail and/or wires, to defraud certain members who believed they were sending money to the State Bar for a specific purpose, into making unauthorized contributions to the Conference of Delegates and/or the State Bar Fund/Cal Bar Fund, by using "overpayments" to make unauthorized contributions.

e. Since on or about 1998 and continuing Defendants intentionally used the mail and/or wires and conspired to use the mail and/or wires to defraud certain members, law firms and government agencies into making multiple payments, which Defendants commingled with the General Fund and used as revenue. These multiple payments were made when the initial payments were not credited to members' accounts because errors in the payment made it difficult to allocate, when posting of the original payment was delayed or when malfunctions in the internet method of payment and/or the credit card method of payment caused multiple payments to be recorded. Defendants intentionally avoided refunding any part of these multiple payments, in some cases for as long as five years, if at all.

f. Since on or about 2002 Defendants intentionally used the mail and/or wires and conspired to use the mail and/or wires to defraud members who believed that a portion of their dues or inactive fees were being used to support the Lawyers Assistance Program (LAP). Since 2002 a portion of the LAP revenues have gone to the State Bar for uses not directly related to the LAP, including but not limited to General Fund programs and/or to the Public Protection Reserve

AMENDED COMPLAINT FOR VIOLATION
OF RACKETEERING INFLUENCED
AND CORRUPT ORGANIZATION ACT              6

1  Fund used to supplement the General Fund.

2   g. In 2000 Defendants intentionally used the mail and conspired to use the mail to defraud certain members who made voluntary payments in 1998 and 1999 to cause them to lose the opportunity to request that their voluntary payments be refunded or credited to their future dues or fees. Refunds and credits had to be expressly requested by a certain date, otherwise the voluntary payments would automatically default to a contribution to the State Bar. Defendants intentionally failed to research correct addresses for statements allegedly returned as "undeliverable" until after the deadline passed and it was too late to request a credit or refund.

 h. Since on or about 1998 Defendants have intentionally used the mail and conspired to use the mail to defraud certain members into paying more for dues than they owe by omitting subtotals on the annual statement and designing the statement so that it is difficult to determine that members have credits or waivers on their accounts.

 I. Defendants have intentionally used the mail and have conspired to use the mail to attempt to defraud certain members and former members as to the amount they owe in reimbursements to the Client Security Fund by duplicating charges and including the cost of collection in what they owe.

 k. At various times since on or about 1998 Defendants have intentionally used the mail and have conspired to use the mail to misrepresent the requirements for fee scaling on the annual statement and defraud certain members into paying more for dues than they were required to pay.

 22. Defendants' pattern of racketeering activity and conspiracy to commit a pattern of racketeering, includes but is not limited to a pattern of extortion, defined by 18 U.S.C. 1951 as the obtaining of property from another, with his consent, induced by a wrongful use of fear or under color of official right. Extortion is a predicate act under RICO, 18 U.S.C. 1961(1). Defendants acted with specific intent to extort funds from members over a period of years beginning in or around 1998 and continuing. Defendants' intentional acts of extortion include

AMENDED COMPLAINT FOR VIOLATION
OF RACKETEERING INFLUENCED
AND CORRUPT ORGANIZATION ACT   7

but are not limited to the following:

a. In or around 1998, using fear of suspension from the State Bar and, under color of official right to receive payments of inactive fees, Defendants intentionally redesigned the fee statement and conspired to redesign the fee statement with specific intent to mislead inactive members over the age of 70 into paying the $50 inactive fee which they were not required to pay. Defendants commingled those payments with the General Fund for State Bar use conspiring to not refund those payments until about 2004/2005, if at all, if cash flow permitted and if the member could be located..

b. Since on or about 1998, using fear of suspension from the State Bar and/or under color of official right to receive money intended to pay for "sections" Defendants have intentionally used certain members' payments for sections and conspired to use these payments for sections, to pay purported late penalties into the General Fund, without seeking or receiving authorization from the member. Under normal circumstances, payments for sections do not go to the General Fund.

c. Since on or about 1998, using fear of suspension from the State Bar and/or under color of official right to receive donations intended for the Foundation of the State Bar of California, also entitled Cal Bar Fund, Defendants have intentionally used some of those donations and conspired to use some of those donations to pay purported late penalties into the General fund without seeking or receiving authorization from the member and without informing the member that their tax deductible donation was reduced.

d. Since on or about 1998, using fear of suspension from the State Bar and/or under color of official right to receive payments from members, Defendants have intentionally used, and conspired to use, all or part of members' excess payments as donations to the State Bar's Conference of Delegates, donations to the Foundation of the State Bar, also known as the Cal Bar Foundation, and in some cases to the State Bar itself. Prior to 2002 the Conference of Delegates was part of the State Bar but since 2002 it has been a separate nonprofit trade

AMENDED COMPLAINT FOR VIOLATION
OF RACKETEERING INFLUENCED
AND CORRUPT ORGANIZATION ACT                    8

association under IRS §501(c)(6), enabling it to engage in advocacy, lobbying and ballot measure activities. These donations have been made without authorization from the member and instead of getting authorization, instead of refunding the money to the member and instead of crediting the money to the member's State Bar account. The remainder of the excess payment, if any, is kept in the General Fund for use by the State Bar and, in some cases, are not carried forward as a credit on the member's account.

e. Since on or about 1998, using fear of suspension from the State Bar and/or under color of official right to receive payments from members and from law firms and government agencies making payments on behalf of members, Defendants have intentionally retained and used and have conspired to retain and use "multiple payments." These multiple payments were made when the initial payments were not credited to members' accounts because errors in the payment made it difficult to allocate, when posting of the original payment was delayed or when malfunctions in the internet method of payment and/or the credit card method of payment caused multiple payments to be recorded. Defendants have intentionally commingled those funds with the State Bar's General Fund and have intentionally avoided refunding any part of those multiple payments, in some cases for as long as five years, if at all.

f. Using fear of suspension from the State Bar and under color of official right to receive payments from members for late penalties, Defendants JOHNSON, HAWLEY, BABCOCK and VAN HORN have intentionally held and have conspired to hold members' 2007 payments of unnecessary penalties, without timely refund. These payments have been held since early February, 2007.

g. Since on or about 2002, using fear of suspension from the State Bar and under color of official right to use a certain portion of each member's dues or inactive fees to support the Lawyers' Assistance Program (LAP), Defendants have used and have conspired to use a portion of the LAP revenues for purposes not directly related to the LAP, including but not limited to General Fund programs and/or the Public Protection Reserve Fund which is used to supplement

the General Fund.

h. Under color of official right to bill attorneys and former attorneys who are required to reimburse the Client Security Fund for payments made to their former clients, Defendants have intentionally over billed and have conspired to over bill those members or former members, including but not limited to billing them for costs of collection activities.

i. In 2000, using fear of suspension from the State Bar and fear of loss of State Bar services and/or under color of official right Defendants JOHNSON, HAWLEY and COTANT intentionally kept and conspired to keep voluntary payments made during the 1998 and 1999 fiscal crisis, as donations to the State Bar, by intentionally causing and conspiring to cause certain members to lose the opportunity to request that their voluntary payments be refunded or credited to their 2000 dues or fees. Refunds and credits had to be expressly requested by a certain date, otherwise the voluntary payments would automatically default to a contribution to the State Bar. Defendants intentionally failed to research correct addresses for statements allegedly returned as "undeliverable" until after the deadline passed and it was too late to request a credit or refund.

j. Since on or about 1998, using fear of suspension from the State Bar and under color of official right to receive payments from members, Defendants have conspired to send confusing and misleading statements, including but not limited to the omission of subtotals, causing certain members who have credits or waivers on their accounts to be misled and to continue paying the full amount of their dues, without using the credit, leaving the amount of the credit in the General Fund for the State Bar's use.

k. Using fear of suspension from the State Bar and under color of official right Defendants have intentionally misrepresented and have conspired to misrepresent, the rights and procedures for dues scaling thereby causing some members who were entitled to scale their dues to remit the entire dues payment instead.

23.    Defendants' pattern of racketeering activity and conspiracy to commit a pattern of racketeering activity includes but is not limited to a pattern of tampering with witnesses and/or potential witnesses as defined by 18 U.S.C. §1512, for the purpose of attempting to prevent Plaintiffs from testifying about federal violations, including but not limited to those described above, in official proceedings and/or reporting federal violations, including but not limited to those described above to law enforcement or a judge of the United States.   This tampering with witnesses has continued since on or about 2002 and is likely to continue. Defendants' tampering with witnesses includes but is not limited to the following:

a. Since on or about 2002, when Plaintiffs began reporting some of the above described federal violations to Defendants, and continuing, Defendants have intentionally demonstrated hostility and have conspired to demonstrate hostility to Plaintiffs amounting to threats of physical force and attempted intimidation, on occasion leaving Plaintiffs physically shaken, in fear of physical injury and/or suffering physically.

b. Since on or about 2002, when Plaintiffs began reporting some of the above described federal violations to Defendants, and continuing, Defendants have intentionally caused others to demonstrate hostility to Plaintiffs and have conspired to cause others to demonstrate hostility to Plaintiffs, amounting to intimidation.

c. In 2005 Defendant PEGGY VAN HORN threatened to reduce the salary grade for the three remaining Billing Technicians, two of whom were Plaintiffs.    That threat has never been withdrawn and Plaintiffs job duties are being reduced and transferred to different department(s). The individual who was the third Billing Technician in 2005 has been transferred to a different department.

d. Plaintiffs' performance evaluations have deteriorated since reporting the above federal violations and in 2005 Defendants COTANT, BABCOCK and VAN HORN, rated Plaintiffs' Communication/ Collaboration/Teamwork/Interpersonal Skills as "needs improvement" which is the lowest possible rating and generates the possibility of discipline up to and including

AMENDED COMPLAINT   FOR VIOLATION
OF  RACKETEERING INFLUENCED
AND CORRUPT ORGANIZATION ACT                           11

termination.   In 2006 Defendant VAN HORN again rated Plaintiffs' Communication/ Collaboration/Teamwork/ Interpersonal Skills as "needs improvement."

    e. In or around 2006 Defendant VAN HORN, threatened Plaintiff CHOW with discipline up to and including termination for saying that the State Bar was misappropriating member funds

.   f. In or around 2006 Defendant VAN HORN threatened Plaintiff WILLIAMS with discipline up to and including termination for identifying what she referred to as "over $1,000,000 in accounting errors" in the Client Security Fund.

    g.  In or around 2004 Defendant BABCOCK told Plaintiff CHOW to stop writing memos and he told Plaintiff WILLIAMS that WILLIAMS would never get promoted if he kept writing memos.  Shortly thereafter BABCOCK personally participated in at least two procedures in which he took wrongful action to assure that WILLIAMS would not be promoted.

    h. Since in or around 2002 and continuing Defendants have wrongfully prevented Plaintiffs from receiving training despite their skills and qualifications and since in or around 2004 Defendants have wrongfully prevented Plaintiffs from receiving promotions.

    I. In 2002/2003 Defendants COTANT , HAWLEY and JOHNSON conspired to provide false information to auditors and to conduct a limited audit based on false information in order to corruptly persuade and mislead Plaintiffs and/or to attempt to corruptly persuade and mislead Plaintiffs, with the intent of influencing, delaying or preventing Plaintiffs' testimony in any official proceeding or reporting to law enforcement or a judge of the United States, about federal violations, including but not limited to the above described extortion and mail/wire fraud violations.

    24.  Within the past four years, Defendants have intentionally and wrongfully deprived Plaintiffs of promotions with the specific intent of attempting to intimidate, harass, corruptly persuade and mislead them into not testifying about Defendants' federal violations, including but not limited to the above described extortion and mail/wire fraud, in official proceedings and not reporting those federal violations to law enforcement or judges of the United States.

AMENDED COMPLAINT   FOR VIOLATION
OF  RACKETEERING INFLUENCED
AND CORRUPT ORGANIZATION ACT        12

Defendants' furtherance of their pattern of racketeering activity is the direct and proximate cause of this injury to Plaintiffs' business and property. Such injury was the direct target of Defendants' pattern of racketeering activities and their conspiracy to conduct a pattern of racketeering activities

25. As a direct, foreseeable and proximate result of Defendants' conduct Plaintiffs have lost salary and other employment benefits, constituting damage to business and property, to which they are entitled, in an amount to be proven at trial.

26. Pursuant to 18 U.S.C.1952. Plaintiffs are entitled to treble damages for business and property losses.

27. As a direct, foreseeable and proximate result of Defendants' pattern of racketeering activity Plaintiffs have incurred and will continue to incur costs and attorney's fees.

## PRAYER FOR RELIEF

THEREFORE, PLAINTIFFS PRAY AS FOLLOWS:

1. For judgment against all defendants;
2. For treble damages to property and business;
3. For Costs and Attorneys Fees;
4. For all other damages the court deems just and proper and
5. For all other relief the court deems just and proper.

Dated: September 13, 2007

_____

Edith J. Benay
Attorney for Plaintiffs

AMENDED COMPLAINT FOR VIOLATION
OF RACKETEERING INFLUENCED
AND CORRUPT ORGANIZATION ACT                13

**JURY TRIAL DEMAND**

Plaintiffs demand, pursuant to Rule 38(b) of the Federal rules of Civil Procedure, a trial by jury of all issues properly triable to a jury.

Dated: September 13, 2007

_____

Edith J. Benay,
Attorney for Plaintiffs

AMENDED COMPLAINT   FOR VIOLATION OF  RACKETEERING INFLUENCED AND CORRUPT ORGANIZATION ACT            14