1  MICHAEL D. BRUNO  (SBN: 166805)
   STEPHANIE B. BRADSHAW  (SBN: 170757)
2  ALYSON CABRERA  (SBN: 222717)
   GORDON & REES LLP
3  Embarcadero Center West
   275 Battery Street, Suite 2000
4  San Francisco, CA 94111
   Telephone:  (415) 986-5900
5  Facsimile:   (415) 986-8054

6  LAWRENCE C. YEE (SBN: 84208)
   HEATHER A. IRWIN (SBN: 203203)
7  OFFICE OF GENERAL COUNSEL
   THE STATE BAR OF CALIFORNIA
8  180 Howard Street
   San Francisco CA 94105-1639
9  Telephone:  (415) 538-2000
   Facsimile:  (415) 538-2321
10
   Attorneys for Defendants
11 JUDY JOHNSON, ROBERT HAWLEY,
   STARR BABCOCK, PEGGY VAN
12 HORN and ELYSE COTANT
13
14
15              UNITED STATES DISTRICT COURT
16       NORTHERN DISTRICT OF CALIFORNIA - OAKLAND
17
                                        )   CASE NO. C 07 4478 CW
18 JUDITH CHOW AND SCOTT WILLIAMS,      )
                                        )
19              Plaintiffs,             )   **MEMORANDUM OF POINTS AND**
                                        )   **AUTHORITIES IN SUPPORT OF**
20         vs.                          )   **DEFENDANTS' MOTION TO DISMISS**
                                        )   **AND MOTION TO STRIKE**
21 JUDY JOHNSON, ROBERT HAWLEY,         )   **[FRCP 12(b)(6), 12(f)]**
   ELYSE COTANT, STARR BABCOCK and      )
22 PEGGY VAN HORN,                      )   Date:       January 24, 2008
                                        )   Time:       2:00 p.m.
23              Defendants.             )   Judge:      Claudia Wilkin
                                        )   Location:   Courtroom 2
24 _____)
                                            Accompanying Papers:  Notice of Motion
25                                          and Motion to Dismiss and to Strike;
                                            Request for Judicial Notice; [Proposed]
26                                          Order
27
28
   _____
   Memorandum of Points and Authorities in Support of Motion to Dismiss and Motion to Strike
                          Case No. C074478 CW

*(left margin vertical text)* Gordon & Rees LLP  Embarcadero Center West  275 Battery Street, Suite 2000  San Francisco, CA 94111

## **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION AND SUMMARY OF ARGUMENT .................................................1

II.   PROCEDURAL HISTORY .................................................................................................3

III.  FACTS ALLEGED IN PLAINTIFFS' COMPLAINT......................................................4

IV.   HEIGHTENED PLEADING STANDARD FOR RICO CLAIMS ....................................5

    A.    Federal Rule of Civil Procedure 12(b)(6) .................................................5

    B.    Federal Rule of Civil Procedure 12(f) ......................................................6

V.    LEGAL ARGUMENT.......................................................................................................6

    A.    Plaintiffs' Claim for Violation of RICO Must be Dismissed for Failure to State a Claim Upon Which Relief Can be Granted.......................................6

        1.    Plaintiffs' Claims for RICO Based on the Predicate Acts of Extortion and Mail/Wire Fraud Fail as a Matter of Law ...........................7

            a.    Plaintiffs have failed to plead facts sufficient to state a legally cognizable RICO claim based on the predicate act of extortion..................................................................................7

            b.    Plaintiffs have failed to state facts sufficient to meet the standing and proximate cause requirements with respect to the predicate acts of extortion and mail/wire fraud ......................9

        2.    Plaintiffs' Claim for RICO Predicated on the Act of Witness Tampering Fails as a Matter of Law ........................................................13

            a.    Plaintiffs have failed to plead facts sufficient to state a legally cognizable RICO claim based on the predicate act of witness tampering...................................................................13

            b.    Plaintiffs have failed to state facts sufficient to meet the standing and proximate cause requirements with respect to the predicate act of witness tampering...........................................16

        3.    Defendants Are Immune from Suit for Violation of RICO .......................17

VI.   CONCLUSION.................................................................................................................20

Gordon & Rees LLP
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111

i

## TABLE OF AUTHORITIES

Page

1    **Cases**

2    *Anderson v. Creighton*,
         483 U.S. 635 (1987)..................................................................................... 18, 19
3
     *Anza v. Ideal Steel Supply Corp.*,
4        ___ U.S. ___, 126 S.Ct. 1991 (2006) ................................................ 10, 11, 12, 17

5    *Associated Gen. Contractors of America v. Metropolitan Water Dist.*,
         159 F.3d 1178 (9th Cir. 1998) .................................................................... 5
6
     *Astech-Marmon v. Lenoci, Jr.*,
7        349 F. Supp. 2d 265 (D. Conn. 2004) ........................................................ 12

8    *Balistreri v. Pacifica Police Dep't.*,
         901 F.2d 696 (9th Cir. 1990) ...................................................................... 5
9
     *Berg v. First State Ins. Co.*,
10       915 F.2d 460 (9th Cir. 1990) ...................................................................... 12

11   *Burrell v. State Farm and Cas. Co.*,
         226 F.Supp.2d 427 (S.D.N.Y. 2002) ........................................................... 7
12
     *Clegg v. Cult Awareness Network*,
13       18 F.3d 752 (9th Cir. 1994) ........................................................................ 5

14   *Cobbs v. Sheahan*,
         319 F.Supp.2d 865 (N.D. Ill. 2004) ........................................................... 6
15
     *Cullinan v. Abramson*,
16       128 F.3d 301 (6th Cir.1997) ....................................................................... 18, 19

17   *Dominque v. Telb*,
         831 F.2d 673 (6th Cir.1987) ....................................................................... 19
18
     *Evans v. United States*,
19       504 U.S. 255 (1992)..................................................................................... 7, 8

20   *Figueroa Ruiz v. Alegria*,
         896 F.2d 645 (1st Cir. 1990) ....................................................................... 2
21
     *Flores v. Emerich & Fike*,
22       416 F.Supp.2d 885 (E.D. Cal. 2006) .......................................................... 6

23   *Garvie v. Jackson*,
         845 F.2d 647 (6th Cir.1988) ....................................................................... 19
24
     *Gilligan v. Jamco Dev. Corp.*,
25       108 F.3d 246 (9th Cir. 1997) ...................................................................... 5

26

27                                                    ii

28

*Gordon & Rees LLP*
*Embarcadero Center West*
*275 Battery Street, Suite 2000*
*San Francisco, CA 94111*

# TABLE OF AUTHORITIES
### (continued)

Page

*Gonzalez v. Lee County Hous. Auth.,*
  161 F.3d 1290 (11th Cir.1998) ........................................................................ 18

*Harlow v. Fitzgerald,*
  457 U.S. 800 (1982)........................................................................................ 18

*Hishon v. King & Spalding,*
  467 U.S. 69 (1984).......................................................................................... 5

*Holmes v. Securities Investor Protection Corporation,*
  503 U.S. 258 (1992)........................................................................... 10, 11, 17

*Howard v. America Online, Inc.,*
  208 F.3d 741 (4th Cir. 2000) ......................................................................... 5, 7

*Impress Communications v. Unumprovident Corp.,*
  335 F. Supp. 2d 1053 (C.D. Cal. 2003) ......................................................... 12

*Jennings v. Emry,*
  910 F.2d 1434 (7th Cir. 1990) ........................................................................ 5

*Jones v. Nat'l. Commun. and Surveillance Networks,*
  409 F.Supp.2d 456 (S.D.N.Y. 2006) .............................................................. 6

*Katzman v. Victoria's Secret Catalog,*
  167 F.R.D. 649 (S.D.N.Y. 1996),
  *aff'd. mem.*, 113 F.3d 1229 (2d Cir. 1997) ................................................... 2

*Lum v. Bank of Amer.,*
  361 F.3d 217 (3d Cir. 2004) ........................................................................... 7

*McCormick v. United States,*
  500 U.S. 257 (1991)........................................................................................ 8

*Miranda v. Ponce Federal Bank,*
  948 F.2d 41 (1st Cir. 1991)............................................................................. 2

*North Star Int'l v. Arizona Corp. Comm'n.,*
  720 F.2d 578 (9th Cir. 1983) .......................................................................... 5

*Oscar v. University Students Co-Operative Ass'n.,*
  965 F.2d 783 (9th Cir. 1992) ..................................................................... 11, 12

*PMC, Inc. v. Ferro Corp.,*
  131 F.R.D. 184 (C.D.Cal. 1990)..................................................................... 2

*Poulos v. Caesars World, Inc.,*
  379 F.3d 654 (9th Cir. 2004) .......................................................................... 9

Gordon & Rees LLP
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

iii

**TABLE OF AUTHORITIES**
(continued)

Page

*Richards v. Harper,*
   864 F.2d 85 (9th Cir. 1988) ................................................................ 5

*Sedima S.P.R.L v. Imrex Co.,*
   473 U.S. 479 (1985) ......................................................................... 7

*Starfish Investment Co. v. Hansen,*
   370 F.Supp.2d 759 (N.D. Ill. 2005) ........................................................ 6

*Stone v. Baum,*
   409 F.Supp.2d 1164 (D. Ariz. 2005) ...................................................... 6

*U.S. v. Harris,*
   498 F.3d 278 (4th Cir. 2007). ............................................................. 15

*U.S. v. King,*
   762 F.2d 232 (2d Cir. 1985) .............................................................. 14

*United States Fire Insur. Co. v. United Limousine Service, Inc.,*
   303 F.Supp. 432 (S.D.N.Y. 2004) ......................................................... 2

*United States v. Deaver,*
   14 F. 595 (W.D.N.C.1882) .................................................................. 8

*United States v. Gillock,*
   445 U.S. 360 (1980) ......................................................................... 8

*United States v. Khatami,*
   280 F.3d 907 (9th Cir. 2002). ........................................................ 13, 14

*United States v. Perry,*
   335 F.3d 316 (4th Cir.2003) ........................................................... 14, 15

*United States v. Urban,*
   404 F.3d 754 (3d Cir. 2005) ............................................................... 7

*Wagh v. Metris Direct, Inc.,*
   348 F.3d 1102 (9th Cir. 2003) ............................................................ 2

*Walton v. City of Southfield,*
   995 F.2d 1331 (6th Cir.1993) ............................................................ 19

*Weizmann Institute of Science v. Neschis,*
   229 F.Supp. 234,(S.D.N.Y. 2002),
   *amended by* 352 F.3d 1187 (9th Cir. 2003), cert. denied ........................... 2

*Western Mining Counsel v. Watt,*
   643 F.2d 618 (9th Cir. 1981) .............................................................. 5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gordon & Rees LLP
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111

## TABLE OF AUTHORITIES
### (continued)

Page

*Wilkie v. Robbins,*
    127 S.Ct. 2588 (2007) ............................................................................................ 7, 8, 9

**Statutes**

18 United States Code
    section 1512 ............................................................................................................ 13, 16

18 United States Code
    section 1512(b) ...................................................................................................... 13

18 United States Code
    section 1512(b)(3) ................................................................................................. 14, 15

18 United States Code
    section 1951 ............................................................................................................ 7

18 United States Code
    section 1961 ............................................................................................................ 6

18 United States Code
    section 1961, *et seq.*, ............................................................................................. 1

18 United States Code
    section 1962(a) ...................................................................................................... 10

18 United States Code
    section 1962(c) ...................................................................................................... 7

18 United States Code
    section 1964(c) ...................................................................................................... 6, 7

California Labor Code
    section 1102.5 ........................................................................................................ 2, 3

Federal Rule of Civil Procedure
    Rule 12(b)(6) ......................................................................................................... 5

Federal Rules of Civil Procedure
    Rule 12(f) ............................................................................................................... 6

Gordon & Rees LLP
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111

1

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

2        Plaintiffs Judith Chow and Scott Williams ("Plaintiffs"), *current* employees of the State

3  Bar of California ("State Bar"), filed a state court action against the State Bar and several of its

4  managerial employees in 2006 alleging retaliation for "whistleblowing" under California's Labor

5  Code.    Discovery commenced, the case was set for trial and the parties were ordered to

6  mediation.  On the eve of the mediation, rather than amending their Complaint in the state court,

7  Plaintiffs filed this federal action, based on the same facts and against virtually all of the same

8  Defendants as their pending state action, under the Racketeer Influenced and Corrupt

9  Organizations Act, 18 U.S.C. §1961, *et seq.*, ("RICO").   In short, Plaintiffs have escalated their

10  prior-filed state court, employment claim that they were denied internal "promotions" in

11  retaliation for "disclosing" financial "defalcations" to the State Bar to this quasi-criminal and

12  inflammatory RICO claim and, without any evidence, allege that five managerial government

13  employees of the State Bar committed three predicate acts.  Plaintiffs claim that the State Bar has

14  been engaged, for the last decade or so, in an organization-wide conspiracy and, in furtherance of

15  some grand scheme to defraud its more than 202,000 attorney members, these particular

16  Defendants have engaged in mail/wire fraud, extortion and witness tampering – not for their

17  personal benefit but for the benefit of their employer -- the State Bar.

18        Plaintiffs' RICO action against these five current and former State Bar employees:

19  Defendants Judy Johnson (State Bar Executive Director), Robert Hawley (Deputy Executive

20  Director), Elyse Cotant (former Director of Member Billing), Starr Babcock (Senior Executive

21  for Member Services) and Peggy Van Horn (Chief Financial Officer) (collectively,

22  "Defendants") is without merit.  As detailed below, RICO's pleading requirements are strict and

23  uncompromising.  Plaintiffs' Amended Complaint is fundamentally deficient in that:

24        (1)    Plaintiffs have failed to allege facts sufficient to state a legally cognizable
             RICO predicate act as required under 18 U.S.C. §1962;

25

26        (2)    Plaintiffs have failed to state facts sufficient to meet the standing and
             proximate cause requirements of 18 U.S.C. §1864; and

27        (3)    Plaintiffs fail to state a claim upon which relief can be granted because as

28

Gordon & Rees LLP
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111

-1-

governmental officials, Defendants are immune from Plaintiffs' RICO claim.

As numerous courts have recognized, the trial court serves an invaluable gatekeeper function in ferreting out obvious abuses of the RICO statute and its built-in, *in terrorum* prospect of treble damages. The "need for expeditious and orderly progress of litigation is particularly pronounced in a civil RICO suit because of its quasi-criminal nature and consequent stigmatizing effect on those named as defendants. Courts should therefore strive to flush out frivolous RICO allegations at an early stage of the litigation." *Wagh v. Metris Direct, Inc.*, 348 F.3d 1102, 1108 (9th Cir. 2003) citing *Figueroa Ruiz v. Alegria*, 896 F.2d 645, 650 (1st Cir. 1990); *United States Fire Insur. Co. v. United Limousine Service, Inc.*, 303 F.Supp. 432, 443 (S.D.N.Y. 2004) (same); *Weizmann Institute of Science v. Neschis*, 229 F.Supp. 234, 245 (S.D.N.Y. 2002), *amended by* 352 F.3d 1187 (9th Cir. 2003), cert. denied, 541 U.S. 1043 (2004) (same). Indeed, the District Court for the Central District of California detailed its concern as follows:

> Like other courts, and perhaps Congress, this Court is legitimately concerned about the misuse of civil RICO….To sketch what is becoming more frequent is to understand the dangers of abusing the RICO weapon. Even if one ignores the effect of spurious treble damage suits, the damage of protracted and extraordinarily expensive discovery rendered by civil RICO claims is all too real.

*PMC, Inc. v. Ferro Corp.*, 131 F.R.D. 184, 187 (C.D.Cal. 1990). *See also Miranda v. Ponce Federal Bank*, 948 F.2d 41 (1st Cir. 1991) ("[C]ivil RICO is an unusually potent weapon – the litigation equivalent of a thermonuclear device"); *Katzman v. Victoria's Secret Catalog*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996) (same), *aff'd. mem.*, 113 F.3d 1229 (2d Cir. 1997).

In the instant case, the need to give heightened scrutiny to Plaintiffs' would-be RICO claim is particularly acute. Here, Plaintiffs have already filed, and there is currently pending, a strikingly similar lawsuit in San Francisco Superior Court alleging "whistleblower retaliation" in violation of California Labor Code section 1102.5 against the State Bar, Mr. Hawley, Ms. Cotant, Mr. Babcock and Ms. Van Horn. With the exception of the addition of one named Defendant in the instant action (Ms. Johnson), Plaintiffs' lawsuits are virtually identical. It is clear that Plaintiffs have simply repackaged, and relabeled, their pending "whistleblower

Gordon & Rees LLP
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111

2

Gordon & Rees LLP
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111

1  retaliation" claim into a claim for "racketeering," solely to obtain the threat of treble damages

2  that would otherwise be unavailable in the prior-filed state action, and to gain an advantage in

3  the prior-filed state action with respect to discovery and settlement.  The specter of opening the

4  gates and flooding the dockets with garden-variety, employment retaliation claims transformed

5  into federal RICO claims looms large.  Plaintiffs' ill-conceived and defectively pled attempt to

6  cobble together a RICO claim in this fashion must be weeded out at this, the pleading stage.

7                            II.    **PROCEDURAL HISTORY**

8          On April 24, 2006, Plaintiffs filed a state action in San Francisco Superior Court alleging

9  "whistleblower retaliation" in violation of California Labor Code section 1102.5 (Case No.

10  CGC-06-451572, referred to herein as the "State Action").  (See Plaintiffs' Complaint in the

11  State Action at **Exhibit A** to the Declaration of Alyson Cabrera in Support of Defendants'

12  Request for Judicial Notice and filed concurrently herewith.)  The State Action, filed against the

13  State Bar, Mr. Hawley, Ms. Cotant, Mr. Babcock and Ms. Van Horn, is set for trial on April 14,

14  2008.

15          In the State Action, Plaintiffs contend that since 2002 up through the present, the State

16  Bar has been "retaliating" against them in the terms and conditions of their employment for

17  complaining about "financial defalcations" allegedly committed by State Bar directors, officers

18  and management employees.    Plaintiffs specifically allege that, amongst other adverse

19  employment actions, the State Bar has failed to promote them to other positions within the

20  organization for which they have applied due to their alleged protected activities.  (See Plaintiffs'

21  Second Amended Complaint in the State Action at **Exhibit B** to the Cabrera Declaration.)

22          The parties were scheduled to mediate the State Action on September 13, 2007.  Notably

23  however, on August 29, 2007, Plaintiffs filed this action claiming that the alleged workplace

24  "retaliation" in the State Action, including failure to receive promotions, also constitutes

25  "racketeering" activity in violation of RICO.    For the reasons stated herein, Defendants

26  demanded that Plaintiffs dismiss the instant lawsuit.  Plaintiffs refused.

27

28

Gordon & Rees LLP
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111

### III.     FACTS ALLEGED IN PLAINTIFFS' COMPLAINT

In the instant action, Plaintiffs allege that Defendants Johnson, Hawley, Cotant, Babcock and Van Horn violated RICO through the commission of three alleged predicate acts:   1) extortion; 2) mail/wire fraud and; 3) witness tampering.  (See Plaintiffs' Amended Complaint at ¶17, attached as **Exhibit C** to the Cabrera Declaration.)[1]

Despite the fact that Plaintiffs are not members of the State Bar, their claims for "extortion" and "mail/wire fraud" are premised entirely on allegations that Defendants mishandled "member" money.  Specifically, Plaintiffs allege that, at least since 1998, and through fear of suspension from the State Bar, Defendants mislead their members into paying various fees they were not required to pay; allocated various member monies to the State Bar's General Fund that were earmarked for other purposes; and used excess member payments as donations rather than refunding or crediting the money to members.  Plaintiffs allege that Defendants used the U.S. mail to accomplish and/or further the alleged acts of extortion and fraud against State Bar members.  (See Plaintiffs' Amended Complaint at ¶¶ 21(a)-(k) and 22(a)-(k), attached as **Exhibit C** to the Cabrera Declaration.)

Plaintiffs further allege that Defendants somehow engaged in "witness tampering," by telling Plaintiffs to stop complaining at work, and by "conspiring to demonstrate hostility to Plaintiffs *amounting to* threats of physical force and violence, on occasion leaving Plaintiffs physically shaken."  (See Plaintiffs' Amended Complaint at ¶23(a)-(i), attached as **Exhibit C** to the Cabrera Declaration.)  Notably, the alleged "hostility" that Plaintiffs conclude "amounts to physical violence" is not specified anywhere in Plaintiffs' Complaint.  Indeed, Plaintiffs have not alleged any facts which indicate that Defendants should reasonably have considered Plaintiffs as prospective witnesses to any federal investigation, or that Defendants took any action against Plaintiffs with the intent to "prevent Plaintiffs from providing testimony regarding federal violations in an official proceeding, or to a law enforcement officer or judge of the United

---

[1]  For the Court's convenience, Defendants respectfully attach Plaintiffs' Amended Complaint to its Request for Judicial Notice.

Gordon & Rees LLP
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111

1    States."

2        Plaintiffs' claim for violation of RICO is frivolous and must be dismissed.

3    **IV.    HEIGHTENED PLEADING STANDARD FOR RICO CLAIMS**

4    **A.    Federal Rule of Civil Procedure 12(b)(6)**

5        Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must be

6    dismissed if it fails to state a claim upon which relief can be granted.  Dismissal under Rule

7    12(b)(6) is proper where there is either a "lack of a cognizable legal theory" or "the absence of

8    sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't.*, 901

9    F.2d 696, 699 (9th Cir. 1990).  The issue on a motion to dismiss for failure to state a valid claim

10   is not whether the plaintiff ultimately will prevail, but whether he is entitled to offer evidence to

11   support the putative claims asserted.  *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984);

12   *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).

13       While the court must accept as true all material allegations in the complaint in evaluating

14   a Rule 12(b)(6) motion, the court need <u>not</u> accept conclusory legal allegations "cast in the form

15   of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged."

16   *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).  Similarly, the court is

17   not bound to accept unreasonable inferences or unwarranted deductions of fact.  *Western Mining*

18   *Counsel v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).  Dismissal is proper if a complaint is vague,

19   conclusory, or fails to set forth any material facts in support of the allegation.  *See North Star*

20   *Int'l v. Arizona Corp. Comm'n.*, 720 F.2d 578, 583 (9th Cir. 1983).  Plaintiff bears the burden of

21   pleading facts sufficient to state a claim, and courts will not supply essential elements of a claim

22   that were not initially pled.  *See Richards v. Harper*, 864 F.2d 85, 88 (9th Cir. 1988).

23       In the RICO context, "conclusory allegations are insufficient to preclude dismissal."

24   *Howard v. America Online, Inc.*, 208 F.3d 741, 750 (4th Cir. 2000); citing *Associated Gen.*

25   *Contractors of America v. Metropolitan Water Dist.*, 159 F.3d 1178, 1181 (9th Cir. 1998); *see*

26   *also Jennings v. Emry*, 910 F.2d 1434, 1438 (7th Cir. 1990) ("In pleading [RICO] predicate acts,

27   conclusory allegations that various statutory provisions have been breached are of no

5

28

Gordon & Rees LLP
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111

1  consequence if unsupported by proper factual allegations"); *Flores v. Emerich & Fike*, 416

2  F.Supp.2d 885, 911 (E.D. Cal. 2006) (conclusory allegations of a "laundry list of purported

3  predicate acts" insufficient to sustain RICO claim); *Stone v. Baum*, 409 F.Supp.2d 1164, 1173

4  (D. Ariz. 2005) (motion to dismiss granted, court noting that "[c]onclusory and vague allegations

5  will not support a cause of action…[t]he complaint must contain sufficient details so that th[e]

6  court can determine whether or not a justifiable claim exists); *Jones v. Nat'l. Commun. and*

7  *Surveillance Networks*, 409 F.Supp.2d 456, 465 (S.D.N.Y. 2006) (allegations that "are largely

8  conclusory, providing no factual or legal basis for defendants' liability" held to be insufficient to

9  state RICO claim); *Starfish Investment Co. v. Hansen*, 370 F.Supp.2d 759, 768 (N.D. Ill. 2005)

10  ("A RICO plaintiff is required, however, to allege sufficient facts to support each element of its

11  RICO claim; '[i]t is not enough for plaintiff to simply allege these elements in boilerplate

12  language.'") quoting *Cobbs v. Sheahan*, 319 F.Supp.2d 865, 869 (N.D. Ill. 2004).

### B.    Federal Rule of Civil Procedure 12(f)

14      Rule 12(f) of the Federal Rules of Civil Procedure provides that, "Upon motion made by

15  a party before responding to a pleading…the court may order stricken from any pleading

16  any…redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. Pro. 12(f).

### V.    LEGAL ARGUMENT

#### A.    Plaintiffs' Claim for Violation of RICO Must be Dismissed for Failure to State a Claim Upon Which Relief Can be Granted

20      In addition to authorizing criminal penalties, RICO provides a private right of action for

21  any person "injured in his business or property by reason of" a RICO violation.  18 U.S.C.

22  §1964(c).  RICO violations are limited to specific predicate acts set forth in the statute.  18

23  U.S.C. §1961.

24      To sustain a claim under RICO, the plaintiff must plead and prove that (1) a defendant

25  person; (2) employed by or associated with an enterprise; (3) that engaged in or affected

26  interstate commerce; (4) and that the defendant person operated or managed; (5) through a

27  pattern of racketeering activity; (6) injured the plaintiff in its business or property; (7) by reason

6

of the pattern of racketeering activity.  18 U.S.C. §§ 1962(c), 1964(c); *Sedima S.P.R.L v. Imrex Co.*, 473 U.S. 479, 496 (1985).  *See also Lum v. Bank of Amer.*, 361 F.3d 217, 223 (3d Cir. 2004); *Howard v. America Online, Inc.*, 208 F. 3d 741, 746 (4th Cir. 2000); *Burrell v. State Farm and Cas. Co.*, 226 F.Supp.2d 427 (S.D.N.Y. 2002).

As noted, Plaintiffs allege that Defendants violated RICO through the commission of three purported predicate acts: 1) extortion; 2) mail/and or wire fraud; and 3) witness tampering. They cannot meet the pleading requirements as to any of them.

> **1.**    **Plaintiffs' Claims for RICO Based on the Predicate Acts of Extortion and Mail/Wire Fraud Fail as a Matter of Law**
>
> **a.**    **Plaintiffs have failed to plead facts sufficient to state a legally cognizable RICO claim based on the predicate act of extortion**

"Extortion" for purposes of a RICO claim means the obtaining of property from another, *with his consent*, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.  18 U.S.C. §1951 (the "Hobbs Act").  Extortion under color of official right occurs when an agent of the government uses his or her legitimate governmental powers to obtain an illegitimate objective.

In order to prove "extortion under color of official right, the [plaintiff/prosecutor] need only show that a public official has obtained a payment to which he was not entitled, knowing that the payment was made in return for official acts." *United States v. Urban*, 404 F.3d 754, 768 (3d Cir. 2005) (quoting *Evans v. United States*, 504 U.S. 255, 268 (1992)).  In other words, when a government agent engages in extortion under color of official right, he is essentially using the governmental powers with which he has been trusted to gain personal rewards.

In the recent United States Supreme Court decision of *Wilkie v. Robbins*, 127 S.Ct. 2588, 2605 (2007), the owner of a commercial guest ranch brought a RICO claim against Bureau of Land Management ("BLM") employees who allegedly used "extortion" in an attempt to force the ranch owner to grant an easement to BLM.  BLM moved to dismiss the RICO claim on the ground that the Hobbs Act does not apply when the national government is the intended

Gordon & Rees LLP
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111

7

1   beneficiary of the allegedly extortionate acts.  *Id.*

2       In analyzing this issue, the Supreme Court stated:  "The importance of the line between

3   public and private beneficiaries for common law and Hobbs Act extortion is confirmed by our

4   own case law, <u>which is completely barren of an example of extortion under color of official right</u>

5   <u>undertaken for the sole benefit of the Government.</u>"  *Id.* (emphasis added) citing *McCormick v.*

6   *United States,* 500 U.S. 257, 273 (1991) (discussing circumstances in which public official's

7   receipt of campaign contributions constitutes extortion under color of official right); *Evans,* 504

8   U.S. at 257 (Hobbs Act prosecution for extortion under color of official right, where public

9   official accepted cash in exchange for favorable votes on a rezoning application); *United States*

10  *v. Gillock,* 445 U.S. 360, 362 (1980) (Hobbs Act prosecution for extortion under color of official

11  right, where state senator accepted money in exchange for blocking a defendant's extradition and

12  agreeing to introduce legislation);  *United States v. Deaver,* 14 F. 595, 597 (W.D.N.C.1882)

13  (under the "technical meaning [of extortion] in the common law, ... [t]he officer must unlawfully

14  and corruptly receive such money or article of value for *his own benefit* or *advantage* ").

15      The Supreme Court further noted:  "More tellingly even, Robbins has cited no decision

16  by any court, much less this one, from the entire 60-year period of the Hobbs Act that found

17  extortion in efforts of <u>Government employees to get property for the exclusive benefit of the</u>

18  <u>Government.</u>"  *Id.* (emphasis added).  The Court stated:

19      [D]rawing a line between private and public beneficiaries prevents suits (not just
        recoveries) against public officers whose jobs are to obtain property owed to the
20      Government. So, without some other indication from Congress, it is not
        reasonable to assume that the Hobbs Act (let alone RICO) was intended to expose
21      all federal employees, whether in the Bureau of Land Management, the Internal
        Revenue Service, the Office of the Comptroller of the Currency (OCC), or any
22      other agency, to extortion charges whenever they stretch in trying to enforce
        Government property claims.
23

24  *Id.*  The Court concluded, "It is not just final judgments, but the fear of criminal charges or civil

25  claims for treble damages that could well take the starch out of regulators who are supposed to

26  bargain and press demands vigorously on behalf of the Government and the public."  *Id.*

27      Here, while Plaintiffs' Complaint contains eleven sub-paragraphs setting forth alleged

28

Gordon & Rees LLP
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111

Gordon & Rees LLP
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111

1   acts of "extortion" under the Hobbs Act, Plaintiffs do not allege that a single action was taken for

2   the *personal benefit or advantage* of any Defendant.  To the contrary, Plaintiffs allege that

3   Defendants engaged in every alleged act of extortion for the sole purpose of benefiting the State

4   Bar.  Plaintiffs specifically allege that Defendants have "a common or shared purpose to increase

5   the State Bar's General Fund and to increase contributions to the Conference of Delegates and

6   the State Bar Foundation, also known as the Cal Bar Foundation, which benefits the State Bar."

7   (See Plaintiffs' Amended Complaint at ¶18, attached as **Exhibit C** to the Cabrera Declaration.)

8         Given the holding of the *Wilkie* decision, it is clear that Plaintiffs' claim for RICO based

9   upon the predicate act of extortion is untenable.  The policy reasons set forth in *Wilkie* for

10  drawing a distinction between "private" and "public" beneficiaries apply with equal force and

11  vigor in this case.  Indeed, just as RICO clearly was not intended to expose public officers whose

12  jobs are to obtain property owed to the *national* government to "extortion" charges in seeking to

13  enforce government property claims, RICO also was not intended to expose public officers

14  whose jobs are to obtain property owed to the *state* government to "extortion" charges in seeking

15  to enforce state property claims.    Just as in *Wilkie*, subjecting Defendants to Plaintiffs'

16  "extortion" charges will necessarily discourage Defendants from vigorously enforcing the

17  policies of the State Bar in order to obtain dues and fees owed by members.

18        Pursuant to this authority, Plaintiffs' claim for RICO predicated on the act of extortion

19  must be dismissed.  Alternatively, Plaintiffs' allegations regarding extortion should be stricken

20  from their Complaint.

21

22              **b.      Plaintiffs have failed to state facts sufficient to meet the**
                          **standing and proximate cause requirements with**
23                        **respect to the predicate acts of extortion and mail/wire**
                          **fraud**

24        Causation lies at the heart of a civil RICO claim.  *Poulos v. Caesars World, Inc.*, 379

25  F.3d 654, 664 (9th Cir. 2004).  Recognized as "the litigation equivalent of a thermonuclear

26  device" that has been widely abused in the civil context as a means to obtain treble damages

27  against business enterprises, the Supreme Court has narrowed RICO's scope in two seminal

                                                    9

28  ─────────────────────────────────────────────────────────────────────

1  decisions by requiring a strict showing of proximate causation. Specifically, the Court held that

2  the "injured...by reason of" clause of Section 1964(c), "demanded...some direct relation

3  between the injury asserted and the injurious conduct alleged." *Holmes v. Securities Investor*

4  *Protection Corporation*, 503 U.S. 258, 268 (1992).

5       In *Holmes*, the plaintiff brought a civil RICO suit alleging that the defendant-

6  conspirator's manipulation of the stock market had caused two broker-dealers to fail, thus

7  triggering the plaintiff's contractual duty to reimburse customers of those broker-dealers. *Id.* at

8  262-263.  Relying on federal antitrust law, the Supreme Court articulated a "proximate cause"

9  standard far stricter than "but for" causation.  *Id.* at 266, 268.  It held that the plaintiff's injury

10  derived from its status as a surrogate for the broker-dealers' customers, and were not proximately

11  caused by the market manipulation.  *Id.* at 274-275.  Rather, the injury was derivative of the

12  harm caused to the broker-dealers by the alleged securities fraud in the first instance, and was

13  thus indirect. *Id.*

14       Recently, the Supreme Court further limited civil RICO claims by strictly applying

15  *Holmes*' proximate cause standard to a suit between competitors. See *Anza v. Ideal Steel Supply*

16  *Corp.*, ___ U.S. ___, 126 S.Ct. 1991, 1994 (2006).  There, Ideal Steel Supply Corp. ("Ideal")

17  brought a civil RICO suit alleging that its principal competitor and business neighbor National

18  Steel Supply, Inc. ("National") failed to charge state sales tax to its cash-paying customers,

19  thereby allowing it to reduce its prices without affecting its profits and causing Ideal to lose

20  market share. *Id.* at 1995. Ideal claimed that National perfected this scheme by filing false state

21  tax returns, which constituted predicate racketeering acts of mail and wire fraud, and that

22  National violated Section 1962(a) by investing its unlawful profits to open a store that also

23  caused Ideal to lose business and market share. *Id.* at 1999.

24       Writing for the majority, Justice Kennedy held that Ideal's alleged injury under Section

25  1962(a) was too attenuated to satisfy the *Holmes* "directness" requirement because it was caused

26  by alleged conduct (offering lower prices) entirely distinct from the alleged RICO violation

27  (defrauding the State).  *Id.* at 1997.  In so concluding, Justice Kennedy relied on the policy

28

Gordon & Rees LLP
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111

10

considerations underlying the proximate cause standard articulated in *Holmes*. "One motivating principle is the difficulty that can arise when a court attempts to ascertain the damages caused by some remote action." *Id.* The Court reasoned that National could have lowered prices for reasons unrelated to the asserted tax fraud; similarly, Ideal's lost sales could have resulted from other factors besides National's lowered prices. *Id.*

The Court found that the speculative nature of the plaintiff's claimed damages would have required the trial court to calculate the portion of National's price drop attributable to the pattern of racketeering activity and then calculate the portion of Ideal's lost sales attributable to the relevant part of the price drop: "The element of proximate causation recognized in *Holmes* is meant to prevent these types of intricate, uncertain inquiries from overrunning RICO litigation." *Id.* at 1998. Finally, the Court concluded that a direct causal connection was particularly warranted where the immediate victim – in this case, the State of New York - could be expected to vindicate RICO by pursuing its own direct claim. *Id.*

In *Holmes*, several steps stood between the violation and the harm – the alleged fraud caused the broker-dealers to incur losses, resulting in business failure and the inability to pay customers, which in turn triggered the plaintiff's duty to reimburse the customers and thus its damages. In *Anza*, however, fewer steps stood between the violation and the harm – the loss of market share was caused, not by the State of New York's injury, but by National's underpayment of tax, which allowed it to undercut Ideal's prices and market share. The *Anza* Court's holding that this closer connection was <u>nevertheless insufficient to demonstrate a direct injury</u>, further tightened RICO's proximate cause standard. In sum, *Anza* has raised the proximate causation bar above that of *Holmes*, by requiring a more direct connection between the wrongful conduct and injury claimed by the plaintiff.

In order to state a cognizable claim for damages under RICO, the alleged injury must be a "concrete financial loss, and not mere injury to a valuable intangible property interest." *Oscar v. University Students Co-Operative Ass'n.*, 965 F.2d 783, 785 (9th Cir. 1992) (en banc) (dismissing a RICO claim on the grounds that plaintiff had alleged a "purely speculative" loss

11

Gordon & Rees LLP
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111

Gordon & Rees LLP
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111

1   and thus had not pled an injury cognizable under RICO, *id.* at 788); *Berg v. First State Ins. Co.*,

2   915 F.2d 460, 463-64 (9th Cir. 1990). *See also Astech-Marmon v. Lenoci, Jr.*, 349 F. Supp. 2d

3   265, 270 (D. Conn. 2004) ("A plaintiff in a private RICO action must allege a compensable

4   injury that is concrete. A speculative injury, an injury to an intangible property interest, or a

5   future injury are not legally sufficient."); *Impress Communications v. Unumprovident Corp.*, 335

6   F. Supp. 2d 1053, 1062-63 (C.D. Cal. 2003) (same).

7        Here, the only financial injury claimed by Plaintiffs is wage loss resulting from the

8   alleged denial of unidentified "promotions" during their employment. (See Plaintiffs' Amended

9   Complaint at ¶23(h), attached as **Exhibit C** to the Cabrera Declaration.) Plaintiffs clearly lack

10  standing to bring claims for extortion or mail/wire fraud because there is simply no question that

11  Plaintiffs, *who are not members of the State Bar*, cannot demonstrate that the alleged acts of

12  extortion and mail/wire fraud against State Bar members proximately caused their alleged wage

13  loss.

14       Moreover, contrary to the controlling law set forth above, Plaintiffs improperly rely upon

15  a "but for" theory of causation. Here, as in *Anza*, several steps necessarily stand between the

16  alleged RICO violation and the alleged harm (wage loss). For example, Plaintiffs appear to

17  allege that "but for" the alleged extortion and mail/wire fraud against State Bar members,

18  Plaintiffs would not have had to complain to management regarding the improper practices; that

19  "but for" Plaintiffs' complaints to management they would not have received alleged negative

20  performance evaluations; that "but for" the alleged negative performance evaluations, they

21  would not have been denied promotions; and that "but for" the denied promotions, they would

22  not have lost wages. Clearly, the nexus between the alleged unlawful conduct *towards the State*

23  *Bar's members, and Plaintiffs' alleged wage loss*, must be rejected as a matter of law as too

24  attenuated to allege *proximate* causation.

25       As Plaintiffs have failed to state facts sufficient to meet the standing and proximate cause

26  requirements with respect to the predicate acts of extortion and mail/wire fraud, insofar as

27  Plaintiffs' RICO claim is based on those putative predicate acts, it must be dismissed. Further,

28

12

1    given that the fundamental deficiencies in Plaintiffs' Amended Complaint cannot be cured

2    through amendment, dismissal must be with prejudice.  Alternatively, Plaintiffs' allegations

3    regarding extortion and mail/wire fraud should be stricken from their Complaint.

4            **2.    Plaintiffs' Claim for RICO Predicated on the Act of Witness Tampering Fails as a Matter of Law**

5
              **a.    Plaintiffs have failed to plead facts sufficient to state a**
6    **legally cognizable RICO claim based on the predicate act of witness tampering**

7

8          The witness tampering statute upon which Plaintiffs rely in their Complaint, reads, in

9    pertinent part, as follows:

10       (b)  Whoever  knowingly  uses  intimidation  or  physical  force,  threatens,  or
     corruptly persuades another person, or attempts to do so, or engages in misleading
11   conduct toward another person, with intent to-

12           (1) influence, delay, or prevent the testimony of any person in an official
     legal proceeding;
13
             ....
14
             (3) Hinder, delay or prevent the communication to a law enforcement
15   officer or judge of the United States of information relating to the
     commission or possible commission of a Federal offense or a violation of
16   conditions of probation, parole, or release pending judicial proceedings;
     shall be fined under this title or imprisoned not more than ten years or
17   both.

18   18 U.S.C. §1512(b).  By its terms, Section 1512(b) prohibits four specific categories of conduct

19   directed  toward  witnesses:  (1)  intimidation,  (2)  physical  force,  (3)  threats,  and  (4)  corrupt

20   persuasion.  *United States v. Khatami*, 280 F.3d 907, 910 (9th Cir. 2002).  "The first three

21   groupings are easily categorized as conduct that is coercive in nature; one does not need to be a

22   regular  viewer  of  'The  Sopranos'  or  other  mass  media  depictions  of  criminal  activity  to

23   understand that prospective witnesses who are affirmatively intimidated or threatened in advance

24   of speaking with investigators may suffer dire consequences if they choose to talk."  *Id.*  Section

25   1512 "does not purport to reach all forms of tampering with a witness, but only tampering by

26   specified means, i.e., by use or attempted use of 'intimidation' or 'physical force' or 'threat' or

27   by engaging in 'misleading conduct toward another person.'"  *U.S. v. King*, 762 F.2d 232, 237

28

Gordon & Rees LLP
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111

Gordon & Rees LLP
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111

1    (2d Cir. 1985).

2        In *United States v. Khatami*, 280 F.3d 907, 910 (9th Cir. 2002), the defendant received

3    Social Security disability benefits and failed to disclose to the government that she had other

4    independent sources of income. *Id.* at 909. The Social Security Administration ("SSA")

5    conducted a brief investigation, discovered numerous misrepresentations made by the defendant,

6    and consequently terminated her benefits. *Id.* A year later, the SSA commenced a further

7    investigation into the defendant's fraudulent conduct. *Id.* In a clear attempt to stifle the

8    investigation, Defendant persuaded two witnesses, for whom she had performed babysitting

9    services, to falsely tell the SSA investigator that she was merely their friend and that they never

10   paid for her babysitting. *Id.* Plaintiff intentionally misrepresented to the witnesses that because

11   they had always paid her in cash, "no one would know" about the payments. *Id.* In considering

12   whether the defendant's conduct violated the witness tampering statute, the court held that the

13   defendant "corruptly persuaded" the witnesses to decline to speak with the SSA investigator and

14   to mislead him with false information about the defendant's babysitting activities in violation of

15   the statute. *Id.* at 914.

16       In *United States v. Perry*, 335 F.3d 316, 319 (4th Cir.2003), Perry challenged his

17   conviction for witness tampering, in violation of Section 1512(b)(3). Perry had been arrested by

18   the Montgomery County Police Department ("MCPD") for weapons violations stemming from

19   his possession in his vehicle of, among other things, a loaded handgun with an obliterated serial

20   number. *Id.* at 318. Perry told the officers that if they would "throw away the gun," he would

21   give them certain information. *Id.* Perry also lied to the officers about his name and birth date,

22   and this conduct comprised the basis for his eventual Section 1512(b)(3) conviction. *Id.* at 319.

23       Perry argued on appeal of his conviction that the government failed to prove that in lying

24   to the MCPD about his name and birth date, he intended to prevent the communication of

25   information to federal officers relating to the possible commission of a federal offense. *Id.* at

26   320. In analyzing this contention, the court explained that the jurisdictional basis for Section

27   1512(b)(3) is "the federal interest of protecting the integrity of potential federal investigations by

28

14

1    ensuring that transfers of information to federal law enforcement...relating to the possible

2    commission of federal offenses be truthful and unimpeded." *Id.* at 321.  In holding that the

3    evidence was sufficient to prove that Perry lied with the intent to disrupt an investigation that

4    happened to be federal, the court was referring to "a *potential* investigation relating to the

5    information he sought to suppress." *U.S. v. Harris*, 498 F.3d 278, 285 (4th Cir. 2007).

6         In this action, Plaintiffs' allegations are clearly insufficient to state a claim for witness

7    tampering.  While the holding of *Perry* makes clear that Section 1512(b)(3) does not require that

8    a federal investigation be underway at the time of the obstructive act, or even that

9    communication with federal officers be "imminent," there must be facts indicating at least the

10   *potential* for a federal investigation at some time in the future.  Indeed, in *Perry*, the defendant

11   provided false and misleading information to local law enforcement authorities after being

12   caught in the commission of a crime involving the possession of firearms.  Under such a factual

13   scenario, there is clearly a *potential* for a federal investigation to occur sometime in the future.

14        Here, Plaintiffs allege no facts which suggest even the likelihood of a *potential* federal

15   investigation related to the alleged "misappropriations" and "accounting errors" that Plaintiffs

16   claim the Defendants wanted to suppress.  Although Plaintiffs allege that Defendants "have

17   conspired to demonstrate hostility to Plaintiffs *amounting to* threats of physical force and

18   violence, on occasion leaving Plaintiffs physically shaken," the alleged "hostile" conduct that

19   somehow "amounted to physical violence" is not identified anywhere in Plaintiffs' Complaint.

20   Such conclusory statements are insufficient to state a RICO claim.  Further, Plaintiffs allege that

21   Defendants threatened them with discipline up to and including termination for "saying" that the

22   State Bar was misappropriating member funds, for "identifying" accounting errors in the Client

23   Security Fund, and for "writing memos."  (See Plaintiffs' Amended Complaint at ¶23(e)-(f),

24   attached as **Exhibit C** to the Cabrera Declaration.)

25        In the first instance, such allegations are impermissibly vague.  Additionally, they amount

26   to no more than allegations that Plaintiffs were told by State Bar managers to stop engaging in

27   such conduct *at work*.  Such allegations have nothing to do whatsoever with the transmission, or

28

Gordon & Rees LLP
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111

15

Gordon & Rees LLP
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111

1    even the *potential* transmission, of any information in any official proceeding, or to any

2    government agency or law enforcement officer.  Indeed, Plaintiffs do not allege that they

3    involved any government agency in their alleged protected activities, that any investigation has

4    ever been undertaken by any government agency in connection with their alleged protected

5    activities, that any investigation is slated to occur, or the involvement of law enforcement at any

6    time whatsoever.  This is particularly notable given that Plaintiffs allege that they have been

7    engaging in protected activities *since 2002*.[2]

8        It is simply absurd that to suggest that any of these five (5) Defendants could have

9    believed that they were "tampering" with prospective federal investigation "witnesses" by

10   allegedly telling Plaintiffs to stop engaging in what management perceived to be conduct

11   disruptive to the workplace.  In reality, Plaintiffs' allegations of "witness tampering" amount to

12   no more then a repackaging of their whistleblower retaliation allegations in the prior-filed State

13   Action, and pursuant to the authority above, such allegations are insufficient to state a claim for

14   witness tampering.  Accordingly, Plaintiffs' claim for violation of RICO as predicated on the act

15   of witness tampering, should be dismissed with prejudice.  Alternatively, Plaintiffs' allegations

16   regarding witness tampering should be stricken from their Complaint.

b.    **Plaintiffs have failed to state facts sufficient to meet the standing and proximate cause requirements with respect to the predicate act of witness tampering**

19       Even if Plaintiffs could sufficiently allege the predicate act of "witness tampering" under

20   Section 1512 (which they clearly cannot), Plaintiffs' claim for violation of RICO must still be

21   dismissed for lack of standing because Plaintiffs' allegations fail the strict proximate causation

---

22   [2] Plaintiffs allege in their Amended Complaint that Defendants conspired to provide false information to "auditors"
     in 2002/2003.  (See Plaintiffs' Amended Complaint at ¶231, attached at **Exhibit C** to the Cabrera Declaration.)  To
23   the extent that Plaintiffs allege that this "audit" is the equivalent of a federal investigation into the alleged
     "misappropriations" about which Plaintiffs complained, the allegation is in bad faith and legally insufficient.
24   Indeed, Plaintiffs are aware (through discovery obtained in the State Action) that the "audit" to which they refer was
     not conducted by any governmental or law enforcement agency.  To the contrary, this "audit" was voluntarily
25   undertaken by an outside accounting firm retained by the State Bar at the organization's own significant expense.
     This "audit" is obviously not tantamount to a federal investigation, and it could not possibly have put Defendants on
26   notice of any potential federal investigation as none has occurred or is slated to occur.  Plaintiffs' impermissibly
     vague allegation regarding this "audit" is misleading and cannot support Plaintiffs' claim of "witness tampering."
27

28   Memorandum of Points and Authorities in Support of Motion to Dismiss and Motion to Strike
     Case No. C074478 CW

1  requirement of *Anza*.

2      Here, as in *Anza*, Plaintiffs' claimed damages – lost wages due to denial of unidentified

3  "promotions," are so speculative and attenuated in nature, that they would require this Court to

4  formulate a complex procedure for apportioning damages that would require a mini-trial and

5  overwhelm the issues in dispute. For example, this Court would be charged with calculating the

6  portion of Plaintiffs' wage loss attributable to the alleged witness tampering, and then calculate

7  the portion of Plaintiffs' wage loss attributable to reasons unrelated to the alleged witness

8  tampering (such as Plaintiffs' performing poorly during job interviews, or having less

9  supervisory experience than other candidates). See *Anza*, 126 S.Ct. at 1997 (the fact that Ideal's

10 lost sales could have resulted from factors other than petitioner's alleged acts of fraud

11 demonstrated a "discontinuity between the RICO violation and the asserted injury").

12     Plaintiffs' prior-filed State Action further complicates the issue because the court will

13 also have to calculate the portion of Plaintiffs' lost wages attributable to the alleged

14 "whistleblower retaliation," as opposed to the portion attributable to the witness tampering

15 alleged in the instant lawsuit. To obviate the risk of multiple recoveries, this Court would have

16 to fashion and apply complex formulae to compute damages if this lawsuit is permitted to go

17 forward. "The element of proximate causation recognized in *Holmes* is meant to prevent these

18 types of intricate, uncertain inquiries from overrunning RICO litigation." *Id.* at 1998.

19     The extremely attenuated connection between Plaintiffs' alleged injury and Defendants'

20 alleged injurious conduct undoubtedly implicates the fundamental concerned expressed in

21 *Holmes*. Plaintiffs have clearly failed to allege that any so-called acts of "witness tampering"

22 *proximately* caused them to lose promotions or wages. Accordingly, Plaintiffs' claim for

23 violation of RICO predicated on witness tampering must be dismissed with prejudice for lack of

24 standing. Alternatively, Plaintiffs' allegations regarding witness tampering should be stricken

25 from their Complaint.

26     **3.    Defendants Are Immune from Suit for Violation of RICO**

27     Plaintiffs' Amended Complaint must be dismissed, with prejudice, as against all

17

28

Gordon & Rees LLP
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111

Gordon & Rees LLP
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111

1  Defendants, because they are immune from Plaintiffs' RICO claim.   Qualified immunity is

2  intended to provide government officials with the ability to "reasonably anticipate when their

3  conduct may give rise to liability for damages." *Anderson v. Creighton,* 483 U.S. 635, 646

4  (1987). "Where that rule is applicable, officials can know that they will not be held personally

5  liable as long as their actions are reasonable in light of current American law." *Id.*  One of the

6  purposes of the qualified immunity standard is to "protect public officials from the 'broad-

7  ranging discovery' that can be 'peculiarly disruptive of effective government.'" *Id.* at n. 6.  For

8  this reason, the Supreme Court has emphasized that "qualified immunity questions should be

9  resolved at the earliest possible stage of a litigation." *Id.*  If a defendant-official can show that

10  the actions the plaintiffs allege the defendant to have taken are actions that a reasonable official

11  could have believed lawful, the defendant "is entitled to dismissal prior to discovery." *Id.*

12      Qualified immunity is a valid defense to RICO and many other federal claims.   See

13  *Gonzalez v. Lee County Hous. Auth.,* 161 F.3d 1290, 1300 (11th Cir.1998) ("this court and others

14  have held that public officials are entitled to assert the defense of qualified immunity when sued

15  under a federal statute other than section 1983," noting that other courts have applied the defense

16  to claims arising under eight separate federal statutes, including RICO); *Cullinan v. Abramson,*

17  128 F.3d 301, 312 (6th Cir.1997) (finding qualified immunity barred RICO claims against city

18  officials).

19      Recognizing the "substantial costs" attendant upon litigation over the subjective good

20  faith of government officials, the Supreme Court held in *Harlow v. Fitzgerald,* 457 U.S. 800, 816

21  (1982), that entitlement to qualified immunity must be determined on a basis of objective legal

22  reasonableness.    "[G]overnment officials performing discretionary functions generally are

23  shielded from liability for civil damages insofar as their conduct does not violate clearly

24  established statutory or constitutional rights of which a *reasonable person* would have known."

25  *Id.* at 818 (emphasis added).

26      The statutory or constitutional rights in question must have been "so clearly established

27  when the acts were committed that *any* officer in the defendant's position, *measured objectively,*

18

28

Gordon & Rees LLP
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111

1  would have *clearly* understood that he was under an affirmative duty to have refrained from such

2  conduct." *Dominque v. Telb*, 831 F.2d 673, 676 (6th Cir.1987) (emphasis added). "This

3  'objective reasonableness' standard focuses on whether defendants reasonably *could* have

4  thought that their actions were consistent with the rights that plaintiff claims have been violated."

5  *Walton v. City of Southfield*, 995 F.2d 1331, 1336 (6th Cir.1993) (emphasis added).

6      It is not determinative, "that the plaintiff has asserted the violation of a broadly stated

7  general right." *Garvie v. Jackson*, 845 F.2d 647, 650 (6th Cir.1988). The act that the official is

8  alleged to have violated must have been 'clearly established' in a more particularized, and hence

9  more relevant, sense: The contours of the right must be sufficiently clear that a reasonable

10  official would understand that what he is doing violates that right." *Id.* (quoting *Anderson,* 483

11  U.S. at 640). For example, in *Anderson*, the plaintiffs asserted violation of the "clearly

12  established right" of "the right to be free from warrantless searches and seizures of one's home

13  unless the searching officers have probable cause and there are exigent circumstances."

14  *Anderson,* 483 U.S. at 640. The Court found this right to be too general to defeat qualified

15  immunity. *Id.* Similarly, in *Cullinan*, the Court rejected the plaintiffs' assertion that the "clearly

16  established" rights violated by the defendants included "a First Amendment right to speak freely

17  on matters of public concern," and "the right to be free from unreasonable actions by government

18  officials which interfere with property interests." *Cullinan,* 128 F.3d at 312.

19      Here, there is no question but that Defendants are immune from suit under RICO. A

20  reasonable person standing in Defendants' positions would not have known that the alleged

21  conduct would violate Plaintiffs' "clearly established statutory or constitutional rights." In the

22  first instance, Defendants would not have had any reason to believe that collecting dues from

23  State Bar members, even in the manner alleged by Plaintiffs, constituted a violation of *any of*

24  *Plaintiffs' rights*, because as emphasized above, <u>Plaintiffs are not members of the State Bar</u> and

25  could not have been harmed by the alleged extortion or fraud. Similarly, with respect to the

26  witness tampering allegations, Defendants cannot reasonably be charged with the advance

27  knowledge that by telling Plaintiffs to stop complaining *in the workplace*, to somehow have

28

19

Gordon & Rees LLP
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111

1  violated Plaintiffs' right to testify in an official proceeding or communicate information relating

2  to the commission or possible commission of a Federal offense to a law enforcement officer or

3  judge of the United States.

4    In sum, Plaintiffs' allegations are patently insufficient to support a claim that Defendants'

5  alleged acts of extortion, mail/wire fraud, or witness tampering violated their "clearly established

6  statutory or constitutional rights."  Plaintiffs' claim for violation of RICO is barred by the

7  doctrine of qualified immunity and must be dismissed with prejudice.

8         **VI.**  **CONCLUSION**

9    For the foregoing reasons, Defendants respectfully request that the Court dismiss

10  Plaintiffs' lawsuit for violation of RICO in its entirety, and with prejudice, for failure to state a

11  claim upon which relief can be granted.  Plaintiffs' Amended Complaint fails to allege facts

12  sufficient to state a legally cognizable RICO predicate act or to meet the statute's strict standing

13  and proximate cause requirements, and further, Defendants are entitled to qualified immunity

14  from suit.

15    Alternatively, Defendants request that the Court strike from Plaintiffs' Complaint

16  allegations relating to any single predicate act that the Court finds immaterial, impertinent, or

17  scandalous.

18  November 30, 2007       GORDON & REES LLP

19                  By: _____

20                  ALYSON CABRERA
                Attorneys for Defendants

21                  JUDY JOHNSON, ROBERT HAWLEY, STARR
                BABCOCK, PEGGY VAN HORN and ELYSE

22                  COTANT

23

24

25

26

27

28