1  MICHAEL D. BRUNO (SBN: 166805)
   STEPHANIE B. BRADSHAW (SBN: 170757)
2  ALYSON CABRERA (SBN: 222717)
   GORDON & REES LLP
3  Embarcadero Center West
   275 Battery Street, Suite 2000
4  San Francisco, CA 94111
   Telephone: (415) 986-5900
5  Facsimile:  (415) 986-8054

6  LAWRENCE C. YEE (SBN: 84208)
   HEATHER A. IRWIN (SBN: 203203)
7  OFFICE OF GENERAL COUNSEL
   THE STATE BAR OF CALIFORNIA
8  180 Howard Street
   San Francisco CA 94105-1639
9  Telephone: (415) 538-2000
   Facsimile: (415) 538-2321
10

   Attorneys for Defendants
11 JUDY JOHNSON, ROBERT HAWLEY,
   STARR BABCOCK, PEGGY VAN
12 HORN and ELYSE COTANT

13

14                    UNITED STATES DISTRICT COURT

15              NORTHERN DISTRICT OF CALIFORNIA - OAKLAND

16

17 | JUDITH CHOW AND SCOTT WILLIAMS,    ) CASE NO. C 07 4478 CW
                                        )
18 |               Plaintiffs,           )
                                        ) **REPLY TO PLAINTIFFS'**
19 |         vs.                         ) **OPPOSITION TO DEFENDANTS'**
                                        ) **MOTION TO DISMISS AND MOTION**
20 | JUDY JOHNSON, ROBERT HAWLEY,        ) **TO STRIKE**
    ELYSE COTANT, STARR BABCOCK and    ) **[FRCP 12(b)(6), 12(f)]**
21 | PEGGY VAN HORN,                     )
                                        ) Date:     January 24, 2008
22 |               Defendants.           ) Time:     2:00 p.m.
                                        ) Judge:    Claudia Wilken
23                                       ) Location: Courtroom 2
                                        )
24

# TABLE OF CONTENTS

|     |     |                                                                                                                                                                                                                                                       | Page |
| --- | --- | ----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------- | ---- |
| I.  |     | INTRODUCTION                                                                                                                                                                                                                                          | 1    |
| II. |     | LEGAL ARGUMENT                                                                                                                                                                                                                                        | 1    |
|     | A.  | Plaintiffs' Late Opposition to Defendants' Motion Should Be Disregarded                                                                                                                                                                               | 1    |
|     | B.  | Plaintiffs Failed to Meaningfully Distinguish the *Wilkie* Decision and Cannot, As a Matter of Law, State a Claim for Extortion                                                                                                                       | 2    |
|     | C.  | Plaintiffs Have Misstated RICO's Proximate Cause Requirement                                                                                                                                                                                          | 5    |
|     |     | 1. Plaintiffs Erroneously Rely Upon a Cursory Discussion and Misapplication of Non-Binding Eleventh Circuit Authority                                                                                                                                 | 5    |
|     |     | 2. Ninth Circuit Authority Supports Dismissal of Plaintiffs' RICO Action                                                                                                                                                                              | 9    |
|     | D.  | Plaintiffs Fail to State a Claim for "Witness Tampering" as Their Allegations Amount to No More than a Garden-Variety Workplace Retaliation Claim                                                                                                     | 11   |
|     | E.  | Plaintiffs Failed to Allege the Violation of Any Clearly Established Statutory or Constitutional Rights of Which Defendants Should Have Been Aware, and Therefore, Plaintiffs' Suit Is Barred by the Doctrine of Qualified Immunity                   | 13   |
| III.|     | CONCLUSION                                                                                                                                                                                                                                            | 14   |

Gordon & Rees LLP
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111

## TABLE OF AUTHORITIES

Page

### Cases

*Anderson v. Creighton*
  483 U.S. 635 (1987)..................................................................................................13

*Associated Gen. Contractors of Cal., Inc. v. California State Council of Carpenters*
  459 U.S. 519 (1983)....................................................................................................8

*Bivens Gardens Office Bldg., Inc. v. Barnett Banks of Fla., Inc.*
  140 F.3d 898 (11th Cir.1998).....................................................................................7

*Diaz v. Gates*
  420 F.3d 897 (9th Cir. 2005).....................................................................................9

*Dominque v. Telb*
  831 F.2d 673 (6th Cir.1987)....................................................................................13

*Giannini v. Real*
  711 F.Supp. 992 (C.D. Cal. 1989).............................................................................3

*Gillmor v. Thomas*
  490 F.3d 791 (10th Cir. 2007)...............................................................................2, 8

*Green Leaf Nursery v. E.I. DuPont De Nemours and Co.*
  341 F.3d 1292 (11th Cir. 2003).........................................................................6, 7, 8

*H.J. Inc. v. Northwestern Bell*
  492 U.S. 229 (1989)..................................................................................................11

*Harlow v. Fitzgerald*
  457 U.S. 800 (1982)..................................................................................................13

*Hirsh v. Justices of the Supreme Court of California*
  67 F.3d 708 (9th Cir. 1995).......................................................................................3

*Holmes v. Securities Investor Protection Corporation*
  503 U.S. 258 (1992)....................................................................................................7

*In Re Attorney Discipline System*
  19 Cal. 4th 582 (1998)............................................................................................3, 4

*In Re Rose*
  22 Cal. 4th 430 (2000)............................................................................................3, 4

*Kaimowtz v. Florida Bar*
  996 F.2d 1151 (11th Cir. 1993).................................................................................4

*Keller v. State Bar of California*
  496 U.S. 1 (1990)....................................................................................................3, 4

## TABLE OF AUTHORITIES
### (continued)

Page

*Khanna v. State Bar of California*
505 F.Supp.2d 633 (N.D. Cal. 2007).................................................................3

*Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*
191 F.3d 229 (2d Cir. 1999).................................................................8

*Lupert v. California State Bar*
761 F.2d 1325 (9th Cir. 1985).................................................................3

*Mendoza v. Zirkle Fruit Co.*
301 F.3d 1163 (9th Cir. 2002).................................................................9, 10

*Middlesex County Ethics Committee v. Garden State Bar Association*
457 U.S. 423 (1982).................................................................3, 4

*Obrien v. Jones*
23 Cal. 4th 40 (2000).................................................................4

*Ramos v. California Comm. Of Bar Examiners*
857 F.Supp. 702 (N.D. Cal. 1994).................................................................3

*Ricotta v. State Bar of California*
4 F.Supp.2d 961 (S.D. Cal. 1998).................................................................3

*Rosenthal v. Justices of the Supreme Court of California*
910 F.2d 561 (1990).................................................................4

*Thiel v. State Bar of Wisconsin*
94 F.3d 399 (7th Cir. 1996).................................................................4

*U.S. v. Harris*
498 F.3d 278 (4th Cir. 2007).................................................................12

*United States v. Khatami*
280 F.3d 907 (9th Cir. 2002).................................................................11

*United States v. Perry*
335 F.3d 316 (4th Cir.2003).................................................................12

*Wagh v. Metris Direct, Inc.*
348 F.3d 1102 (9th Cir. 2003).................................................................12

*Williams v. Mohawk Industries, Inc.*
465 F.3d 1277 (11th Cir. 2006).................................................................5, 6

*Wu v. State Bar of California*
953 F.Supp. 315 (N.D. Cal. 1997).................................................................3

Gordon & Rees LLP
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111

# TABLE OF AUTHORITIES
## (continued)

Page

**Statutes**

Bus. & Prof. Code § 6008 .................................................................................................. 3

## I. INTRODUCTION

Plaintiffs JUDITH CHOW and SCOTT WILLIAMS' ("Plaintiffs") untimely Opposition fails to present any legal challenge to the motion filed by Defendants JUDY JOHNSON, ROBERT HAWLEY, ELYSE COTANT, STARR BABCOCK and PEGGY VAN HORN (collectively, "Defendants"). Plaintiffs' Amended Complaint for alleged violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") must still be dismissed as fundamentally deficient in that:

(1) Plaintiffs failed to meaningfully distinguish the *Wilkie* decision and cannot, as a matter of law, state a claim for extortion;

(2) Plaintiffs have misstated the proximate cause requirements of 18 U.S.C. §1864;

(3) Plaintiffs failed to demonstrate how their claim for "witness tampering" amounts to anything more than a claim for garden-variety workplace retaliation; and

(4) Plaintiffs failed to allege the violation of any "clearly established" statutory or constitutional rights of which Defendants should have been aware, and therefore, their suit is barred by the doctrine of qualified immunity.

## II. LEGAL ARGUMENT

### A. Plaintiffs' Late Opposition to Defendants' Motion Should Be Disregarded

Civil Local Rule 7-3(a) requires oppositions to be served and filed 21 days before the hearing date of a motion. Failure by counsel or a party to comply with the local rules is sanctionable conduct. L. Civ. R. 1-4. Moreover, filings which are untimely under the Local Rules have been disregarded by this Court. See *Fireman's Fund Ins. Co. v. Nat'l Bank for Cooperatives*, 1995 U.S. Dist. LEXIS 7983, *2 n. 1; *Brown v. Iantorno*, 1996 U.S. Dist. LEXIS 13181, *5, n.1. With respect to the filing of a reply, Civil Local Rule 7-3(c) requires that reply briefs be served and filed 14 days before the hearing date of a motion.

Here, Plaintiffs are in clear violation of Local Rule 7-3(a). The instant motion is currently calendared to be heard on January 24, 2008. Accordingly, Plaintiffs were required to serve and file an opposition no later than Thursday, January 3, 2008. Plaintiffs however did not serve or file any opposition to the instant motion until Friday, January 4th at 10:30 p.m., thereby
Gordon & Rees LLP
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111

1  depriving Defendants from utilizing the full amount of time afforded to them by Local Rule 7-
2  3(c) to prepare their reply. Plaintiffs also proffered no excuse whatsoever for their lack of
3  timeliness.

4  Due to Plaintiffs' flagrant disregard of the Local Rules, this Court should disregard their
5  Opposition and limit its consideration of this motion to the papers duly submitted by Defendants.

**B. Plaintiffs Failed to Meaningfully Distinguish the *Wilkie* Decision and Cannot, As a Matter of Law, State a Claim for Extortion**

Plaintiffs assert in their Opposition that *Wilkie v. Robbins*, 127 S.Ct. 2588, 2605 (2007), is inapplicable to the instant case because it applies to the "national" government as opposed to the "state" government. (Plaintiffs' Opposition at 1-4.) Plaintiffs' argument is not persuasive as they have failed to articulate how the policy reasons articulated in *Wlkie* are any less applicable in the state government context than in the national government context.

Clearly, it is equally important in both the state and national arena to limit the exposure of public officers whose jobs are to obtain property owed to the government to "extortion" charges in seeking to enforce government property claims because this limitation serves the same purpose in both contexts. Indeed, exposing such public officers to "extortion" charges, in either the sate or federal arena, would have the same negative consequence of taking the starch out of regulators who are supposed to bargain and press demands vigorously on behalf of the Government and the public. There is no meaningful distinction to be drawn from *Wilkie* based on "state" versus "national" government. Further, there is no question that public officers such as Defendants, who are not alleged to have engaged in *any* extortion for personal gain, are entitled to the protections articulated in *Wilkie*.[1]

Additionally, Plaintiffs erroneously assert that there are situations "in which the United States Supreme Court does not find the State Bar of California to be a government agency *of any*

---

[1] A case cited by Plaintiffs is also illustrative. In *Gillmor v. Thomas*, 490 F.3d 791, 793 (10th Cir. 2007), landowners brought suit against County Officials alleging that their administration of zoning ordinances constituted extortion in violation of RICO. *Id.* Holding that County Officials had committed no predicate acts as required under RICO, the court dismissed the case. *Id.* at 798. The court stated, "We fail to see how actions taken under the direct authority, and for the purpose of enforcing a valid ordinance can possibly be deemed extortionate." *Id.*

2
Reply to Plaintiffs' Opposition to Defendants' Motion to Dismiss and Motion to Strike
Case No. C074478 CW

*kind.*" (Plaintiffs' Opposition at 13:5-6.) Plaintiffs' assertion is contrary to a plethora of well-settled authority.

"The State Bar [of California] is a state constitutional entity, placed within the judicial article of the California Constitution and thus expressly acknowledged as an integral part of the judicial function." *In Re Rose*, 22 Cal. 4th 430, 438 (2000) (citing Cal. Const. art. VI, § 9; *In Re Attorney Discipline System*, 19 Cal. 4th 582, 598-99 (1998)). The California State Bar, like other state bars, is an arm of the judiciary and its activities are "activities of the state." See *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423, 433-34 (1982).[2] All property of the State Bar is "held for essential public and governmental purposes in the judicial branch of the government." Bus. & Prof. Code § 6008.

Further, Plaintiffs have misread and misstated the holding of *Keller v. State Bar of California*, 496 U.S. 1 (1990), in contending that "the United States Supreme Court does not find the State Bar to be a government agency of *any kind.*" In *Keller*, the Court decided which standard should apply under First Amendment jurisprudence to speech claims of bar members objecting to payment of compulsory bar dues to support political or ideological activities of the State Bar. *Id.* at 5. In reversing the California Supreme Court's application of the governmental speech doctrine, the United States Supreme Court noted that the State Bar was "a good deal different from other [public] entities" – such as a governor, mayor, or a state tax commission – that under the governmental speech doctrine "may speak despite citizen disagreement with the

---

[2] The State Bar is "an administrative arm of this court for the purpose of assisting in matters of admission and discipline of attorneys." *In Re Rose*, 22 Cal. 4th at 438; *In Re Attorney Discipline System*, 19 Cal. 4th at 599-600. "The objective of the discipline system is not punishment of the attorney, but protection of the public." *In Re Attorney Discipline System*, 19 Cal. 4th at 609. "The interests of the public, the legal system, and the courts all benefit from the existence of a functioning and effective attorney disciplinary system." *Id.* at 610. Accordingly, the Ninth Circuit and this court have held that the Eleventh Amendment applies to the State Bar because of its status as an instrumentality or arm of the State. *Hirsh v. Justices of the Supreme Court of California*, 67 F.3d 708, 715 (9th Cir. 1995) (per curiam); *Lupert v. California State Bar*, 761 F.2d 1325, 1327 (9th Cir. 1985), cert. denied, 474 U.S. 916 (1985); *Ramos v. California Comm. Of Bar Examiners*, 857 F.Supp. 702, 705 (N.D. Cal. 1994); see also, *Ricotta v. State Bar of California*, 4 F.Supp.2d 961, 976-77 (S.D. Cal. 1998); *Wu v. State Bar of California*, 953 F.Supp. 315, 318-19 (N.D. Cal. 1997); *Giannini v. Real*, 711 F.Supp. 992, 996 (C.D. Cal. 1989) aff'd other gds., 911 F.2d 354, 356-57 (9th Cir. 1990). *Khanna v. State Bar of California*, 505 F.Supp.2d 633, 644-45 (N.D. Cal. 2007).

content of its message" and that there was instead a "substantial analogy" between the relationship of the State Bar and its members and that of a labor union and its members *Id.* at 10-13. Accordingly, while the Supreme Court concluded <u>for purposes of speech jurisprudence</u>, that the State Bar may be distinguished from the "typical government official or agency,"[3] it did not hold, as erroneously argued by Plaintiffs, that the State Bar was not a government agency.

Further, in *Rosenthal v. Justices of the Supreme Court of California*, 910 F.2d 561 (1990), which immediately followed the Supreme Court's decision in *Keller*, the Ninth Circuit rejected an argument that the State Bar was not a state agency based on a similar misreading of *Keller*. The Ninth Circuit held that the "substantial analogy" between the State Bar and a labor union made in *Keller* did <u>not</u> establish that the State Bar was a private organization, instead of a state agency. Relying upon the analysis of the State Bar in *Keller* itself, the Ninth Circuit held: "In recommending disbarment, the bar association is not a private organization disciplining its members, but an 'administrative arm' of the state Supreme Court designed to assist its decisionmaking." *Id.* at 566-67.[4]

Here, there simply can be no question that the State Bar is an arm of the state government, and that Plaintiffs' reliance on *Keller* is misplaced. Further, just as in *Wilkie*, subjecting Defendants to Plaintiffs' "extortion" charges will necessarily discourage the vigorous enforcement of the policies of the State Bar to the detriment of the public officers and the public.

Pursuant to authority above, Plaintiffs' claim for RICO predicated on the act of extortion must be dismissed. Alternatively, Plaintiffs' allegations regarding extortion should be stricken from their Complaint.

---

[3] Notably, courts "typically" have cited the sui generis nature of the State Bar in holding that it is an arm of the state. *In Re Attorney Discipline System*, 19 Cal. 4th 582, 599, 600 (1998) (State Bar is "administrative arm of this court" even though it is "sui generis" and "not an administrative board in the ordinary sense of the phrase"); *In Re Rose*, 22 Cal. 4th 430, 438-39 (2000); *Obrien v. Jones*, 23 Cal. 4th 40, 49-50 (2000); see, *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423, 433, 434 n. 12 (1982).

[4] Even in claims brought under *Keller*, courts have held that a state bar is a state agency and immune from suit under the Eleventh Amendment. *Thiel v. State Bar of Wisconsin*, 94 F.3d 399, 401 (7th Cir. 1996); *Kaimowtz v. Florida Bar*, 996 F.2d 1151, 1152 (11th Cir. 1993).

### C. Plaintiffs Have Misstated RICO's Proximate Cause Requirement

#### 1. Plaintiffs Erroneously Rely Upon a Cursory Discussion and Misapplication of Non-Binding Eleventh Circuit Authority

Plaintiffs expressly conceded that the alleged predicate acts of extortion, mail fraud and wire fraud <u>have not proximately caused any injury to their business or property interests</u>. (Plaintiffs' Opposition at 15:2-7.) Nevertheless, Plaintiffs contend that they are entitled to pursue their RICO claim (in addition to their prior filed State Action for "whistleblower retaliation") because they were denied promotions and therefore lost wages due to alleged "witness tampering." Plaintiffs premise their argument on the notion that "only one predicate act in an alleged pattern of racketeering activity must proximately cause injury to Plaintiffs' business or property interests," no matter how attenuated the other alleged predicate acts. (*Id.* at 9:11.)

Plaintiffs' faulty argument is premised upon their cursory discussion and misapplication of non-binding Eleventh Circuit authority. In reality, each of the authorities upon which Plaintiffs erroneously rely demonstrates that Plaintiffs are not victims, have sustained no injury, and have stated no valid RICO claim based upon their alleged predicate acts of extortion or mail/wire fraud.

For example, in *Williams v. Mohawk Industries, Inc.*, 465 F.3d 1277, 1280 (11th Cir. 2006), current and former hourly employees brought a class action alleging that their employer's widespread and knowing employment and harboring of illegal workers allowed it to reduce labor costs by depressing wages for its legal hourly employees and discouraging worker's compensation claims, in violation of federal and state RICO statutes. The plaintiffs further alleged that the defendant concealed its efforts to hire and harbor illegal aliens by destroying documents and assisting illegal workers in evading detection by law enforcement. *Id.* at 1282.

In concluding that the plaintiffs alleged sufficient proximate cause to withstand the defendant's motion to dismiss, the court closely scrutinized the attenuation between the first predicate act – the alleged illegal scheme – and the alleged harm – wage loss. Indeed, the court noted the following allegations stated in the plaintiffs' complaint:

<pre>
</pre>

> The complaint alleges that 'Mohawk's widespread employment and harboring of illegal workers has substantially and unlawfully increased the supply of workers from which Mohawk makes up its hourly workforce. This unlawful expansion of the labor pool has permitted Mohawk to depress the wages that it pays all its hourly employees....'
>
> The plaintiffs also allege that "[o]ne purpose and intended effect of Mohawk's widespread employment and harboring of illegal workers is to deprive Mohawk's hourly workforce of any individual or collective bargaining power" and that they "were injured by direct and proximate reason of Mohawk's illegal conduct."

*Id.* at 1288. The Court held that the plaintiffs alleged a sufficiently direct relation between their claimed injury and the alleged RICO violations because according to their complaint, the defendant's widespread scheme of knowingly hiring and harboring illegal workers had the purpose and direct result of depressing the wages paid to the plaintiffs. *Id.* at 1289. The Court further noted that wholesale illegal hiring depresses wages for the legal workers in north Georgia where the defendant is located, and that therefore, the plaintiffs sufficiently alleged that the defendant's illegal conduct had a "substantial and direct effect" on wages that the defendant paid to its legal workers. *Id.* The Court further noted that "the Supreme Court has already recognized a direct correlation between illegal hiring and lower wages." *Id.*

*Williams* is obviously distinguishable from the instant case. Here, Plaintiffs have alleged three predicate acts in violation of RICO, but expressly concede that there is no connection whatsoever between their alleged wage loss and the first *and second* alleged predicate acts of extortion and mail/wire fraud. This is unlike *Williams*, where the plaintiffs alleged that all of the predicate acts – *including the first predicate act – the alleged illegal scheme of which plaintiffs were not direct victims* – had a substantial and direct connection to their alleged wage loss. Contrary to Plaintiffs' assertion, *Williams* clearly does not support the proposition that only one predicate act in an alleged pattern of racketeering activity must proximately cause injury to Plaintiffs' business or property interests, no matter how attenuated the other alleged predicate acts.

Similarly, *Green Leaf Nursery v. E.I. DuPont De Nemours and Co.*, 341 F.3d 1292, 1296 (11th Cir. 2003), also does not support Plaintiffs' assertion. In *Green Leaf*, a Florida plant

nursery and its owner brought a suit for fraud and products liability against DuPont in a Florida state court. *Id.* The plaintiffs' attorney was also responsible for monitoring hundreds of similar suits brought by plant growers across the country. *Id.* The plaintiffs ultimately settled their claims with DuPont. *Id.* The plaintiffs alleged that after settling their case however, they discovered that DuPont had engaged in a scheme to defraud them into settling their case for less money than they would have otherwise been able to obtain by withholding information and making false statements in a federal case being monitored by their attorney. *Id.*

The plaintiffs argued that they were "direct targets" of DuPont's racketeering activity and that they suffered "direct injury" in that DuPont knew that the plaintiffs' attorney was monitoring the federal case and that DuPont hid and falsified evidence in that case to defeat cases throughout the country. Plaintiffs alleged mail fraud, wire fraud, obstruction of justice and witness tampering in violation of RICO.

In determining whether the plaintiffs sufficiently alleged proximate causation between the alleged predicate acts and the alleged harm, the court asked "whether the alleged conduct was 'aimed primarily' at a third party." *Id.* at 1307; citing *Bivens Gardens Office Bldg., Inc. v. Barnett Banks of Fla., Inc.*, 140 F.3d 898, 906 (11th Cir.1998) (holding that a party whose alleged injuries result from " 'the misfortunes visited upon a third person by the defendant's acts lacks standing to pursue a claim under RICO") (quoting *Holmes v. Securities Investor Protection Corporation*, 503 U.S. 258, 268 (1992)). Based upon this standard, the Court analyzed each alleged predicate act to determine whether plaintiffs could establish proximate causation.

The court held that Plaintiffs' predicate mail and wire fraud claims failed because Plaintiffs could <u>not establish justifiable reliance</u> with respect to these claims, a *requirement* of a civil RICO fraud claim. *Id.* at 1307. Similarly, with respect to the alleged acts of obstruction of justice and witness tampering, the court held that the plaintiffs could <u>not</u> demonstrate proximate cause between those acts and plaintiffs' alleged injuries. *Id.* The court held that DuPont's alleged knowledge that the plaintiffs' attorney was monitoring the federal case (in which DuPont allegedly withheld information and made false statements), "is too remote to satisfy the proximate cause requirements because the directness inquiry is not a question of specific intent."

*Id.*; citing *Associated Gen. Contractors of Cal., Inc. v. California State Council of Carpenters*, 459 U.S. 519, 537 (1983); *Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229, 242 (2d Cir. 1999) (noting that "an allegation of specific intent does not overcome the requirement that there must be a direct injury to maintain this action;" the contrary view was "specifically rejected" by the Supreme Court). The court concluded, "The test for RICO standing is whether the alleged injury was directly caused by the RICO violation, not whether such harm was reasonably foreseeable." *Id.*

Like *Williams*, *Green Leaf* clearly does <u>not</u> hold that only one predicate act in an alleged pattern of racketeering activity must proximately cause injury to Plaintiffs' business or property interests, no matter how attenuated the other alleged predicate acts. This statement is not part of the court's holding, which has been misrepresented by Plaintiffs.[5] In reality, *Green Leaf* confirms that there must be a direct causal link between the alleged RICO violations and the alleged harm and that a standard of "foreseeable harm" is insufficient. Moreover, an analysis of the <u>facts</u> of *Green Leaf*, which Plaintiffs did not bother to provide, actually supports Defendants' position.

Here, the attenuation between Plaintiffs' allegations of extortion and mail/wire fraud and claims of wage loss is even greater than the attenuation present between the alleged predicate acts and alleged harm in *Green Leaf*. Plaintiffs necessarily allege that many steps stand between the alleged RICO violation and the alleged harm. Indeed, Plaintiffs necessarily allege that "but for" the alleged extortion and mail/wire fraud against State Bar members, Plaintiffs would not have had to complain to management regarding the improper practices; that "but for" Plaintiffs' complaints to management they would not have received alleged negative performance evaluations; that "but for" the alleged negative performance evaluations, they would not have been denied promotions; and that "but for" the denied promotions, they would not have lost

---

[5] Plaintiffs further contend that this proposition is supported by *Gillmor v. Thomas*, 490 F.3d 791, 793 (10th Cir. 2007). *Gillmor* is distinguishable however as there, the court specifically noted that although many of the acts constituting an alleged pattern of racketeering activity involved non-parties, the landowners <u>also alleged in detail *several* predicate acts directed toward them</u>. *Id.* at 797.

wages. Given the great attenuation between the alleged acts of extortion and mail/wire fraud and Plaintiffs' alleged wage loss, it is not even *reasonably foreseeable* that alleged acts of extortion or mail/wire fraud directed at <u>State Bar members</u> would somehow cause Plaintiffs to suffer wage loss.

In sum, Plaintiffs' reliance upon non-binding Eleventh Circuit authority is clearly based upon an erroneous and cursory reading of those cases unsupported by any analysis and is misplaced.

### 2. Ninth Circuit Authority Supports Dismissal of Plaintiffs' RICO Action

Plaintiffs contend that Defendants argued "the wrong standard for injury to business or property in the context of a civil RICO action" and failed to address Ninth Circuit authority on this issue. (Plaintiffs' Opposition at 16:17-24.) Plaintiffs make much ado of nothing; there is no argument in Defendants' moving papers that wage loss is not a cognizable form of injury to business or property under RICO. Rather, Defendants' argument is that there is *no proximate cause* between the alleged predicate acts of extortion and mail/wire fraud and the wage loss alleged by Plaintiffs, an argument which is supported by Ninth Circuit authority.[6]

In *Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, 1166 (9th Cir. 2002), legally documented agricultural laborers sued fruit growers under RICO alleging that the growers intentionally leveraged the hiring of undocumented immigrants in order to depress their wages. In considering whether the alleged injury was "too remote" to allow recovery, the court noted: "In a series of cases beginning in the antitrust context and later extended to RICO, the Supreme Court clarified that potential plaintiffs who have suffered 'passed-on' injury - that is, injury derived from a third party's direct injury - lack statutory standing." *Id.* at 1169.

The Ninth Circuit considered three non-exhaustive factors in its analysis of proximate

---

[6] Plaintiffs' reliance upon *Diaz v. Gates*, 420 F.3d 897, 902 (9th Cir. 2005), is therefore misplaced. In *Diaz*, the District Court only addressed whether plaintiff alleged a proper injury, <u>not</u> whether the injury was "by reason of" the RICO violation. *Id.* at n. 3. For this reason, the Ninth Circuit expressly "decline[d] to address the RICO causation requirement in the first instance." *Id.*

causation: (1) whether there are more direct victims of the alleged wrongful conduct who can be counted on to vindicate the law as private attorneys general; (2) whether it will be difficult to ascertain the amount of the plaintiff's damages attributable to defendant's wrongful conduct; and (3) whether the courts will have to adopt complicated rules apportioning damages to obviate the risk of multiple recoveries. *Id.*

Turning to the first factor, and taking the allegations in the complaint as true, the court could "not discern a more direct victim of the illegal conduct." *Id.* at 1170. The court stated, "The alleged scheme here was intended to give the growers a contract advantage at the expense of the documented workers, a direct rather than a pass-through injury." *Id.* The court also noted that the undocumented workers cannot "be counted on to bring suit for the law's vindication." *Id.* After consideration of the three factors, the court ultimately held that the laborer plaintiffs sufficiently alleged a RICO claim sufficient to survive a motion to dismiss. *Id.*

Here, there is no question that Plaintiffs cannot demonstrate that their alleged injuries were proximately caused by the alleged extortion or mail/wire fraud. Indeed, application of the *Mendoza* factors is illustrative. Even assuming that Plaintiffs' allegations regarding these alleged predicate acts are true (which they are not), there are clearly "more direct victims" of those acts - <u>State Bar members</u>. Further, unlike *Mendoza*, which involved undocumented workers, the alleged "direct victims" here are *attorneys*, and are therefore particularly well suited to "be counted on to bring suit for the law's vindication."

Finally, Plaintiffs' claimed damages – lost wages due to denial of unidentified "promotions" over a "four year" period are so speculative and attenuated in nature, that they would necessarily require this Court to formulate a complex procedure for apportioning damages. Indeed, for each alleged denial of promotion, this Court would be charged with calculating the portion of Plaintiffs' wage loss attributable to the alleged extortion and mail/wire fraud, and then calculate the portion of Plaintiffs' wage loss attributable to reasons unrelated to those acts (such as Plaintiffs' performing poorly during job interviews, or having less supervisory experience than other candidates).

Plaintiffs' prior-filed State Action further complicates the issue because the court will

10

Reply to Plaintiffs' Opposition to Defendants' Motion to Dismiss and Motion to Strike
Case No. C074478 CW

also have to calculate the portion of Plaintiffs' lost wages attributable to the alleged "workplace retaliation," as opposed to the portion attributable to the extortion and mail/wire fraud alleged in the instant lawsuit. This Court would absolutely have to fashion and apply complex formulae to compute damages to obviate the risk of multiple recoveries under the circumstances.

As Plaintiffs have failed to state facts sufficient to meet the standing and proximate cause requirements with respect to the predicate acts of extortion and mail/wire fraud, insofar as Plaintiffs' RICO claim is based on those putative predicate acts, it must be dismissed. Further, given that the fundamental deficiencies in Plaintiffs' Amended Complaint cannot be cured through amendment, dismissal must be with prejudice. Alternatively, Plaintiffs' allegations regarding extortion and mail/wire fraud should be stricken from their Complaint.

### D. Plaintiffs Fail to State a Claim for "Witness Tampering" as Their Allegations Amount to No More than a Garden-Variety Workplace Retaliation Claim

In conceding that they have suffered no proximate injury to their property or business interests as a result of the alleged predicate acts of extortion and mail/wire fraud, Plaintiffs cannot meet the requirement that a RICO violation be supported by *two or more* predicate acts. *H.J. Inc. v. Northwestern Bell*, 492 U.S. 229, 240 (1989). On this basis alone, Plaintiffs' RICO claim must be dismissed. Even if Plaintiffs could proceed with their RICO claim premised solely on a stand-alone claim for "witness tampering" however, it is clear that they have not stated such a claim.

Here, Plaintiffs failed to cite a single authority analogous to the facts of the instant case. Indeed, Plaintiffs proffer no authority which holds that an employee who complains in the workplace regarding issues that could possibly relate to the commission of a federal crime constitutes a "witness" for purposes of 18 U.S.C. Section 1512. Further, the cases cited by Defendants demonstrate that something more than a workplace complaint regarding something that can be characterized as federal in nature is required to confer "witness" status on an individual for purposes of the tampering statute.

Indeed, *United States v. Khatami*, 280 F.3d 907, 910 (9th Cir. 2002), involved a government investigation of the defendant by the Social Security Administration ("SSA").

Similarly, *United States v. Perry*, 335 F.3d 316, 319 (4th Cir.2003), involved the defendant's provision of false and misleading information to local law enforcement authorities after being caught in the commission of a crime involving the possession of firearms. Additionally, *U.S. v. Harris*, 498 F.3d 278, 281 (4th Cir. 2007), involved the commission of crimes relating to the firebombing of an individual's home to prevent her from continuing to contact law enforcement regarding the sale of illegal drugs in her area. Further, the parties in *Harris* did not dispute that the evidence was sufficient to prove that the defendants acted with the intent to prevent communication to Baltimore City Police about the commission or possible commission of a federal offense. *Id.* at 284.

Under the factual scenario of each of these authorities, there is clearly a potential for a federal investigation to occur sometime in the future in which the implicated individuals may serve as "witnesses." Here however, Plaintiffs allege no facts which suggest even the likelihood of a potential federal investigation related to their alleged workplace complaints. Stripped of its rhetoric, Plaintiffs' claim for "witness tampering" is no more than a re-labeling of their prior-filed State Action for "whistleblower retaliation."

To allow Plaintiffs "witness tampering" claim to go forward would necessarily encourage abuse of the RICO statute by entitling any plaintiff alleging "whistleblower retaliation" to also state a claim for violation of RICO. As numerous courts have recognized, the trial court serves an invaluable gatekeeper function in ferreting out obvious abuses of the RICO statute and its built-in, in terrorum prospect of treble damages. *Wagh v. Metris Direct, Inc.*, 348 F.3d 1102, 1108 (9th Cir. 2003). For the foregoing reasons, this Court should prevent any such abuses from occurring by ferreting out Plaintiffs' legally insufficient complaint at the pleading stage.

In sum, Plaintiffs' claim for violation of RICO as predicated on the act of witness tampering, should be dismissed with prejudice. Alternatively, Plaintiffs' allegations regarding witness tampering should be stricken from their Complaint.

E.  **Plaintiffs Failed to Allege the Violation of Any Clearly Established Statutory or Constitutional Rights of Which Defendants Should Have Been Aware, and Therefore, Plaintiffs' Suit Is Barred by the Doctrine of Qualified Immunity**

If a defendant-official can show that the actions the plaintiffs allege the defendant to have taken are actions that a reasonable official could have believed lawful, the defendant "is entitled to dismissal prior to discovery." *Anderson v. Creighton,* 483 U.S. 635, 646 (1987). Further, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a *reasonable person* would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982) (emphasis added). The statutory or constitutional rights in question must have been "so clearly established when the acts were committed that *any* officer in the defendant's position, *measured objectively,* would have *clearly* understood that he was under an affirmative duty to have refrained from such conduct." *Dominque v. Telb,* 831 F.2d 673, 676 (6th Cir.1987) (emphasis added).

Here, Plaintiffs contend that because the extortion, fraud and witness tampering statutes existed prior to 2002, Plaintiffs have somehow articulated a statutory or constitutional right so clearly established that *any* officer in Defendants' position, measured objectively, would have clearly understood that they were under an affirmative duty to have refrained from such conduct.

Plaintiffs' argument must be rejected as circular and unsupported by any authority. Indeed, Plaintiffs' argument pre-supposes, and relies upon, the unproven *legal conclusion,* that Defendants have actually committed extortion, mail/wire fraud and witness tampering (which is absolutely false). Plaintiffs however completely failed to address the *factual* allegations pled in their complaint, which clearly do not indicate that *any* officer in Defendants' position, measured objectively, would have "clearly understood" that they were under an affirmative duty to have refrained from such conduct.

Here, Defendants would not have had any reason to believe that collecting dues from State Bar members, even in the manner alleged by Plaintiffs, constituted a violation of the rights of *anyone, especially Plaintiffs*, because as emphasized above, Plaintiffs are not members of the

13
Reply to Plaintiffs' Opposition to Defendants' Motion to Dismiss and Motion to Strike
Case No. C074478 CW

State Bar and could not have been harmed by the alleged extortion or fraud. Similarly, with respect to the witness tampering allegations, Defendants cannot reasonably be charged with the advance knowledge that by telling Plaintiffs to stop complaining *in the workplace*, to somehow have violated Plaintiffs' right to testify as "witnesses" in an official proceeding or communicate information relating to the commission or possible commission of a federal offense to a law enforcement officer or judge of the United States.

In sum, Plaintiffs' allegations are patently insufficient to support a claim that Defendants' alleged acts of extortion, mail/wire fraud, or witness tampering violated any "clearly established statutory or constitutional rights" of which Defendants should have been aware. Plaintiffs' RICO claim is barred by the doctrine of qualified immunity and must be dismissed.

### III.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiffs' lawsuit for violation of RICO with prejudice, for failure to state a claim upon which relief can be granted. Plaintiffs' Amended Complaint fails to allege facts sufficient to state a legally cognizable RICO predicate act or to meet the statute's strict standing and proximate cause requirements, and further, Defendants are entitled to qualified immunity from suit.

Alternatively, Defendants request that the Court strike from Plaintiffs' Complaint allegations relating to any single predicate act that the Court finds immaterial, impertinent, or scandalous.

Dated: January 10, 2008                         GORDON & REES LLP

                                                By: _____
                                                    ALYSON CABRERA
                                                    Attorneys for Defendants
                                                    JUDY JOHNSON, ROBERT HAWLEY, STARR
                                                    BABCOCK, PEGGY VAN HORN and ELYSE
                                                    COTANT