IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUDITH CHOW and SCOTT WILLIAMS,<br><br>    Plaintiffs,<br><br>  v.<br><br>JUDY JOHNSON, ROBERT HAWLEY, ELYSE COTANT, STARR BABCOCK and PEGGY VAN HORN,<br><br>    Defendants.            / | No. C-07-4478 CW<br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND GRANTING LEAVE TO AMEND |

    Defendants Judy Johnson, Robert Hawley, Elyse Cotant, Starr Babcock and Peggy Van Horn move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the first amended complaint (FAC) against them. Plaintiffs Judith Chow and Scott Williams oppose the motion. The motion was heard on January 24, 2008. At the Court's request, the parties submitted additional briefing after the hearing. Having considered the parties' papers and oral argument on the motion, the Court grants Defendants' motion and grants Plaintiffs leave to amend.

BACKGROUND

    Plaintiffs are two member-billing technicians employed by the State Bar of California. FAC ¶¶ 6,7. Their amended complaint

1 alleges that since 1998 Defendants, current and former State Bar
2 employees[1], acting in their individual and official capacities,
3 "have participated directly or indirectly in conducting the affairs
4 of the State Bar enterprise through a pattern of racketeering
5 activity in violation of 18 U.S.C. § 1962(c)," a provision of the
6 Racketeer Influenced and Corrupt Organizations Act (RICO). Id. at
7 ¶ 17. Plaintiffs allege that the pattern of racketeering activity
8 is based on three types of predicate acts, extortion, mail and wire
9 fraud and tampering with witnesses with the intent of preventing
10 them from testifying in official proceedings about the extortion
11 and mail and wire fraud. Id.

12 Plaintiffs' claims are based on "financial defalcations in the
13 Member Billing Department to Defendants, which defalcations amount
14 to extortion and mail fraud under federal law." Id. at ¶¶ 6, 7.
15 Further, Plaintiffs allege that since 2002, when they began
16 reporting these defalcations, "Defendants have subjected [them] to
17 witness tampering and have conspired to subject [them] to witness
18 tampering in violation of federal law." Id.

19 According to Plaintiffs, the RICO enterprise's purpose is "to
20 increase the State Bar's General Fund and to increase contributions
21 to the Conference of Delegates and the State Bar Foundation, also

---

[1] Plaintiffs allege that Defendant Hawley is the Deputy Executive Director; Defendant Cotant is the former Director of Member Billing and former Director of Member Services and has continued to act as a Special Advisor to the Member Service Center since her separation from the organization in 2005; Defendant Van Horn is the Senior Executive, Finance; Defendant Babcock is the Special Assistant to the Executive Director and Senior Executive, Member Services; and Johnson is the Executive Director. FAC ¶¶ 8-12.

2

known as the Cal Bar Foundation, which benefits the State Bar." Id. at ¶ 18.  Specifically, Plaintiffs allege that Defendants used the mail to misrepresent fees due to members in various ways.  Id. at 21.  For example, Defendants have misrepresented the fee waiver for inactive members over the age of seventy in order to defraud those members into paying fees that they were not required to pay. Id. at 21a.  These members had to wait years for refunds if they received any refunds at all.  Id.  Defendants have also misled members to pay unspecified "penalties" when those individuals were trying to make contributions to the State Bar Fund or to join one of the State Bar's sections.  Id. at ¶¶ 21b,c.  According to Plaintiffs it was impossible for members to avoid these penalties without reducing the amount intended to go to the fund or toward membership in a section.  Id.  Further, Defendants purposefully used the mail and/or wires to induce members, firms and government agencies to make multiple payments and then intentionally avoided refunding any part of these multiple payments.  Id. at ¶ 21e.

    Plaintiffs' extortion allegations are based on the same acts as their mail and wire fraud allegations.  Id. at 22.  According to Plaintiffs, Defendants were able to achieve and benefit from the alleged misrepresentations by "using fear of suspension from the State Bar" and acting "under color of official right to receive payments" while using those payments for purposes not intended by the members.  Id.

    Finally, Plaintiffs allege that Defendants tampered with witnesses and/or potential witnesses in violation of 18 U.S.C. § 1512, attempting to prevent Plaintiffs from testifying about

3

federal violations including, but not limited to, the allegations of mail fraud, wire fraud and extortion described above. <u>Id.</u> at ¶ 23. Plaintiffs allege that since 2002, when they began complaining about the acts described above, "Defendants have intentionally demonstrated hostility and conspired to demonstrate hostility to Plaintiffs amounting to threats of physical force and attempted intimidation, on occasion leaving Plaintiffs physically shaken, in fear of physical injury and/or suffering physically." <u>Id.</u> Plaintiffs support this allegation by claiming that Defendants have, among other things, intentionally caused others to intimidate Plaintiffs, threatened to reduce Plaintiffs' salary grade, reduced Plaintiffs' job duties and transferred those duties to other departments, rated Plaintiffs as "needs improvement" in their performance evaluations, threatened Plaintiffs with discipline up to and including termination, told Plaintiffs that they would not be promoted if they continued to report the defalcations, wrongfully prevented Plaintiffs from receiving training and wrongfully deprived Plaintiffs of promotions. <u>Id.</u>

Over a year before filing this complaint, Plaintiffs filed a complaint in San Francisco Superior Court against the State Bar alleging retaliation for whistleblowing under California Labor Code § 1102.5. <u>See</u> Defendants' Request for Judicial Notice, Ex. A.[2]

Defendants now move to dismiss the complaint, arguing that

---

[2] Defendants' request that the Court take judicial notice of the state court complaint and amended complaint and the complaint in this case is granted (Docket No. 13). The pleadings are not subject to reasonable dispute and are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. <u>See</u> Fed. R. Evid. 201.

4

Plaintiffs have failed to state a RICO claim.  In the alternative, Defendants move to strike certain allegations from the complaint.

DISCUSSION

Under the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  A plaintiff need not set out in detail the facts upon which it bases its claim; however, the plaintiff must "give the defendant fair notice of what the plaintiff's claim is and the grounds on which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957); see Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007).  All material allegations in the complaint, "even if doubtful in fact," are assumed to be true, id., and are construed in the light most favorable to the plaintiff.  NL Indus., Inc. v. Kaplan, 792 F. 2d 896, 898 (9th Cir. 1986).

When granting a motion to dismiss, the court is generally required to grant the plaintiff leave to amend, even if no request to amend the pleading was made, unless amendment would be futile. Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 246-47 (9th Cir. 1990).

I.   RICO Enterprise

"A violation of § 1962(c) . . . requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Sedima v. Imrex Co., 473 U.S. 479, 496 (1985).  A "pattern of racketeering activity" is a term of art meaning at least two acts of racketeering activity (predicate acts) within ten years of each

5

other.³ Id. at § 1961(5). The plaintiff must allege that these predicate acts are related (relatedness requirement), "and that they amount to or pose a threat of continued criminal activity" (continuity requirement). H.J., Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239 (1989) (emphasis in original).

As discussed above, Plaintiffs have alleged three types of predicate acts, mail and wire fraud in violation of 18 U.S.C. § 1341 and 1343, extortion in violation of the Hobbs Act, 18 U.S.C. § 1951, and witness tampering in violation of 18 U.S.C. § 1512. The injury that Plaintiffs allege is lost salary and employment benefits.

The Supreme Court has held that the definition of relatedness can be found in other parts of Title 18 of the United States Code. H.J., 492 U.S. at 240. Therefore, "criminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." Id. (quoting 18 U.S.C. § 3575(e)).

Here, the alleged criminal acts serve two different purposes. The alleged mail and wire fraud and extortion serve to allow Defendants to collect payments on behalf of the State Bar to which it is not entitled. The alleged witness tampering serves to

---

³RICO defines racketeering activity as "any act or threat involving" specified state law crimes, any "act" indictable under various specified federal statutes, and certain federal "offenses" ("predicate acts"). 18 U.S.C. § 1961(1). Predicate acts include, among other things, mail fraud, 18 U.S.C. § 1341, wire fraud, 18 U.S.C. § 1343, and "any act which is indictable under . . . title 18, United States Code . . . section 1512 (relating to tampering with a witness, victim, or an informant)." Id.

6

prevent Plaintiffs from disclosing Defendants' wrongful acts. The victims of the fraud and extortion are the State Bar members while the victims of the witness tampering are Plaintiffs. Defendants are able to defraud the State Bar members by misleading them about the requirements of membership. Defendants attempt to prevent Plaintiffs from reporting this wrongdoing by means of threats and employment retaliation. Although the characteristics of the predicate acts need not be the same, they must at least be "similar." The purposes, victims and methods of commission in this case are not. Based on these differences, the Court finds that the predicate acts do not meet the relatedness requirement.

Further, Plaintiffs concede that they have not been proximately harmed by the alleged fraud and extortion. A plaintiff in a civil RICO action "only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." Sedima, 473 U.S. at 496. Plaintiffs argue that they need only allege that their injury was "proximately caused by at least one of the predicate acts in the pattern of racketeering activity." Opposition at 5. In support, Plaintiffs cite dicta from various cases.

First, Plaintiffs cite a footnote in Sedima, which quotes the definition of "pattern" discussed above. 473 U.S. at 496 n.14 (quoting 18 U.S.C. § 3575(e)). Plaintiffs argue that the requirement that the predicate acts have the "same or similar victims" clearly establishes "that the predicate acts which form a pattern of racketeering activity, need not all have the same victims." Opposition at 15. However, as discussed above, this

7

definition relates to the issue of whether predicate acts are related, not to proximate cause or standing.

Similarly, Plaintiffs quote an Eleventh Circuit case which states that "one or more of the predicate acts must not only be the 'but for' cause of the injury, but the proximate cause as well." Williams v. Mohawk Indus., 465 F.3d 1277, 1287 (11th Cir. 2007) (quoting Green Leaf Nursery v. E.I. DuPont DeNemours & Co., 341 F.3d 1292, 1307 (11th Cir. 2003)).  Plaintiffs argue that this dicta proves that only one of the disparate predicate acts must be the proximate cause of their injuries.  However, both Williams and Green Leaf are distinguishable from this case because the alleged predicate acts in those cases all had the same intended results. For example, the Williams plaintiffs alleged three predicate acts, violations of:

> (1) 8 U.S.C. § 1324(a)(3)(A), which makes it a federal crime to "knowingly hire[] for employment at least 10 individuals with actual knowledge that the individuals are aliens" during a twelve-month period; (2) 8 U.S.C. § 1324(a)(1)(A)(iii), which makes it a federal crime to "conceal[], harbor[], or shield from detection, or attempt[] to conceal, harbor or shield from detection" aliens that have illegally entered the United States; and (3) 8 U.S.C. § 1324(a)(1)(A)(iv), which makes it a federal crime to "encourage[] or induce[] an alien to come to, enter, or reside in the United States, knowing or in reckless disregard of the fact that such coming to, entry, or residence is or will be in violation of law.

465 F.3d at 1283.  All of these acts were directly related to the defendant employer's alleged efforts to "hire and harbor illegal workers in an effort to keep labor costs as low as possible." Id. at 1281.  Similarly, in Green Leaf, the plaintiff alleged "mail fraud, in violation of 18 U.S.C. § 1341; wire fraud, in violation

of 18 U.S.C. § 1343; obstruction of justice, in violation of 18 U.S.C. § 1503; and tampering with witnesses, in violation of 18 U.S.C. § 1512" as predicate acts for their RICO claim. 341 F.3d at 1306. Again all of these alleged acts related to the plaintiff's overall allegations that the defendant had "engaged in a massive scheme of perjury, falsification of evidence, and fraudulent concealment of evidence to induce themselves and other Benlate plaintiffs to settle their claims for less than the claims' fair value." Id. at 1296. According to the plaintiff's allegations, each of the predicate acts was directed at the plaintiff or its attorneys in the underlying litigation with the purpose of inducing the plaintiff to settle.

Plaintiffs also cite a Tenth Circuit case where the plaintiffs alleged forty-one predicate acts, only eight of which involved the plaintiffs. Gilmor v. Thomas, 490 F.3d 791, 797 (10th Cir. 2007). In holding that the Gilmor plaintiffs had RICO standing, the Tenth Circuit noted that the plaintiffs "allege[d] several predicate acts directed toward them" and such acts "damaged them by reducing the development potential (and thus the value) of their property." Id. at 797. However, those statements, when read in context, suggest that the plaintiffs did not have standing to bring a RICO claim based on the acts that were not directed toward them. The court stated, "Although many of the acts constituting an alleged pattern of racketeering activity involve non-parties, as noted above, Landowners also allege several predicate acts directed toward them." Id. Further, the Gilmore court was only briefly addressing the threshold question of standing before reviewing the

9

district court's grant of summary judgment to the defendants based on a finding that the plaintiffs could not prove any predicate act.

None of the cases cited by Plaintiffs supports a finding that they have plead a RICO claim when they have plead two types of predicate acts with the purpose of fraudulently taking money from State Bar members and one type of predicate act with the purpose of keeping Plaintiffs from disclosing the first two predicate acts.

Further, the very test laid out by the Ninth Circuit for establishing whether a RICO plaintiff has statutory standing demonstrates the mis-match between Plaintiffs' theory and the statute's purpose. In determining whether a plaintiff has RICO standing, "[t]he key task is to determine whether th[e] injury was 'by reason of' the [] alleged violations, a requirement the Supreme Court has interpreted to encompass proximate as well as factual causation." Mendoza v. Zirkle Fruit Co., 301 F.3d 1163, 1168 (9th Cir. 2002). In the Ninth Circuit, courts examine

> three nonexhaustive factors in considering causation, that is whether the injury is "too remote" to allow recovery: "(1) whether there are more direct victims of the alleged wrongful conduct who can be counted on to vindicate the law as private attorneys general; (2) whether it will be difficult to ascertain the amount of the plaintiff's damages attributable to defendant's wrongful conduct; and (3) whether the courts will have to adopt complicated rules apportioning damages to obviate the risk of multiple recoveries."

Id. at 1169 (quoting Ass'n of Wash. Pub. Hosp. Dists. v. Philip Morris Inc., 241 F.3d 696, 701 (9th Cir. 2001)).

It is not possible to apply the Ninth Circuit's test to the scheme Plaintiffs allege because the various predicate acts

10

targeted different individuals and, as Plaintiffs admit, caused different harms.  The primary victims of the alleged scheme or pattern are the State Bar members.  Taking Plaintiffs' allegations as true, Plaintiffs became collateral victims of the scheme when they decided to complain of Defendants' wrongdoing.  In other words, Plaintiffs' losses were not caused by the alleged scheme, but by their decision to object to the scheme.  In all of the other cases cited by Plaintiffs, each of the predicate acts at issue caused the same harm to the plaintiffs, even if they were not the proximate cause of the harm.  Because Plaintiffs here were not proximately harmed by the alleged mail fraud, wire fraud or extortion, they do not have standing to assert a RICO claim based on those acts.

Defendants next argue that, without the allegations of mail and wire fraud and extortion, Plaintiffs' RICO claim necessarily fails because two of their three predicate acts have been eliminated.  Therefore, Defendants argue that Plaintiffs cannot meet the requirement that a RICO violation be supported by two or more predicate acts.  However, this element does not require two or more types of offenses.  Plaintiffs' complaint appears to allege multiple acts of witness tampering.

However, as Defendants also argue, Plaintiffs' witness tampering allegations fail to state a claim under 18 U.S.C. § 1512 because there is not even a suggestion of a potential federal investigation in which Plaintiffs were prevented from participating.  As Defendants note, a reading of § 1512 broad enough to support Plaintiffs' theory would allow any plaintiff

11

alleging a pattern of retaliation for internally reporting activity he or she believed to be a federal offense to bring a RICO claim for witness tampering. Plaintiffs counter that the statute specifically provides that "an official proceeding need not be pending or about to be instituted at the time of the offense." 18 U.S.C. § 1512(f).

However, Plaintiffs do not cite and the Court is not aware of any case in which the witness tampering provision was applied to a situation in which there was no potential for a federal investigation. See, e.g., United States v. Khatami, 280 F.3d 907, 910 (9th Cir. 2002) (involving witnesses to a government investigation of defendant by the Social Security Administration); United States v. Harris, 498 F.3d 278, 281 (4th Cir. 2007) (involving threats to an individual to prevent her from contacting local law enforcement regarding the sale of illegal drugs in her neighborhood); United States v. Perry, 335 F.3d 316, 319 (4th Cir. 2003) (involving the report of false and misleading information to local law enforcement). Further, Plaintiffs have not alleged any intent to report Defendants' actions outside of the workplace.

Defendants argue that the RICO claim based on the predicate acts of witness tampering should be dismissed with prejudice. However, it is possible that Plaintiffs can allege facts sufficient to amount to two or more acts of witness tampering within ten years. Therefore, the Court dismisses the complaint with leave to amend.

In doing so, Plaintiffs should be mindful that their allegations of § 1512 witness tampering violations require that

12

they have knowledge of "the commission or possible commission of a Federal offense" in the first instance. 18 U.S.C. § 1512(b)(3). Here, Plaintiffs allege that they had knowledge that Defendants were violating the federal mail and wire fraud and extortion statutes. However, as discussed at the hearing, Plaintiffs' allegations regarding these federal offenses do not provide a basis upon which even a possible commission of a federal offense can be found.

Plaintiffs suggest that Defendants' billing statements sent via the U.S. mail and the internet misled State Bar members and caused them to make overpayments. However, Plaintiffs make no allegations about what the statements say, how they are misleading or whether State Bar members have relied or could reasonably rely on those statements to their detriment. Absent those facts, Plaintiffs have not plead a witness tampering claim that involves the possible commission of mail and wire fraud.

Plaintiffs rely on the same allegations to establish Defendants' commission of extortion, arguing, "Because members can lose their right to practice if they are suspended or disciplined by the State Bar, using billing statements from the State Bar makes this conduct a violation of the federal extortion statute." Opposition at 2. As Defendants argue, these acts do not constitute the "possible commission" of a Hobbs Act violation because, even taking Plaintiffs allegations as true, Defendants were acting to get the excess fees from State Bar members for the benefit of the State Bar, a government organization. As the Supreme Court recently noted, "The importance of the line between public and

13

private beneficiaries for common law and Hobbs Act extortion is confirmed by our own case law, which is completely barren of an example of extortion under color of official right undertaken for the sole benefit of the Government." Wilkie v. Robbins, 127 S. Ct. 2588, 2605 (2007). The Court explained that "without some other indication from Congress, it is not reasonable to assume that the Hobbs Act (let alone RICO) was intended to expose all federal employees . . . to extortion charges whenever they stretch in trying to enforce Government property claims." Id. Therefore, the Court held that "the Hobbs Act does not apply when the National Government is the intended beneficiary of the allegedly extortionate acts." Id. Although the Bar is a state rather than federal government entity, the same reasoning applies. As the Court reasoned, "It is not the final judgments, but the fear of criminal charges or civil claims for treble damages that could well take the starch out of regulators who are supposed to bargain and press demands vigorously on behalf of the Government and the public." Id. A potential federal investigation of extortion cannot be alleged on this theory to support witness tampering predicate acts.

II.  Qualified Immunity

Defendants also argue that they are entitled to qualified immunity. The Court notes that Plaintiffs' complaint as presently plead does not contain sufficient factual allegations on which to base a qualified immunity inquiry. Because Defendants raise the affirmative defense of qualified immunity, Plaintiffs must include in their amended complaint "'specific, nonconclusory factual

14

allegations' that establish improper motive causing cognizable injury." Crawford-El v. Britton, 523 U.S. 574, 598 (1998) (quoting Siegert v. Gilley, 500 U.S. 226, 236 (1991) (Kennedy, J., concurring in judgment)). Those specific allegations must demonstrate the acts taken by and the improper motive of the individual Defendants named by Plaintiffs.

To establish Defendants' improper motive with respect to the witness tampering claims, Plaintiffs must allege facts to demonstrate not only that Defendants took steps to stop Plaintiffs from reporting Defendants' scheme but also that Defendants believed that their scheme constituted mail and wire fraud that might expose them to federal liability.

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion to dismiss Plaintiffs' FAC (Docket No. 11). Plaintiffs may file a second amended complaint if, consistent with the constraints of Rule 11, they can allege a RICO claim based on a pattern of two or more specific instances of actionable witness tampering within ten years.[4] The fraud that Plaintiffs allege Defendants acted to prevent Plaintiffs from reporting must be described with sufficient particularity to allow a conclusion that a federal investigation could have resulted. The elements of mail fraud and wire fraud should be addressed. Plaintiffs must also include non-conclusory factual allegations specific enough to allow adjudication of Defendants' qualified immunity affirmative defense. Any such

---

[4] As discussed above, Plaintiffs may not plead mail fraud, wire fraud or extortion as the predicate acts for their RICO claim.

15

complaint shall be filed within twenty-one days of the date of this order. If Plaintiffs use in their amended complaint facts arguably covered by the state court protective order, they shall submit their amended complaint to Defendants for review prior to filing. If Defendants believe that any of the facts alleged are covered by the protective order and justify a sealing order, they shall indicate which parts Plaintiffs should redact from the complaint and shall file a declaration as required by Civil Local Rule 79-5. Plaintiffs shall file a motion to seal and a redacted version of the complaint in the public record and submit an unredacted version of the complaint to be filed under seal in the manner outlined in Rule 79-5.

If Plaintiffs do not file an amended complaint, the case will be dismissed with prejudice. If Plaintiffs file an amended complaint, Defendants shall notice any motion to dismiss for hearing at 2:00 PM on April 24, 2008. Unless the case has been dismissed, a further case management conference will also be held on that date.

IT IS SO ORDERED.

Dated: 2/5/08

CLAUDIA WILKEN
United States District Judge